## CHARLES GOALER v. THE STATE.

CRIMINAL LAW. *Evidence.* Where the court, to show the animus of the prisoner, and to illustrate the merits of the plea of self-defense, admitted proof of an old feud, and the frequent and deadly threats of the prisoner to take the life of the deceased; *Held,* this was not error.

SAME. *Same. Charge.* The prisoner being on trial for murder in the second degree, it was not error for the court to charge the jury as to every grade of homicide. It is perhaps safe to enlighten the jury as to all other grades of homicide, that they may the better comprehend the precise crime with which the prisoner is charged, provided it be accompanied with an admonition that he cannot be convicted of any higher grade than that upon which he is arraigned.

### FROM MAURY.

Appeal from Criminal Court.    W. S. MCLEMORE, J.

WM. J. WEBSTER for Goaler.

SNEED, J., delivered the opinion of the court.

This prisoner appeals in error from a judgment of the Criminal Court at Columbia upon a conviction of of the crime of manslaughter. The indictment charges him with the offense of murder in the second degree upon the body of William C. Rummage. He was first tried and convicted of murder in the second degree, and adjudged to suffer confinement for the period of ten years.

Upon his motion for a new trial, the verdict was set aside and a new trial awarded. He was again put upon his trial, and the result was a conviction of voluntary manslaughter, and his period of confine-

Goaler v. The State.

ment in the penitentiary fixed at ten years. This verdict was also set aside, and upon the third and last trial below, the prisoner was again convicted of voluntary manslaughter and adjudged to suffer confinement for the period of seven years and eight months. From this judgment he has appealed in error. The prisoner sought in the court below to excuse the homicide on the ground of self-defense. The proof is that there had been for sometime an angry feud between the deceased and the prisoner. On the day of the homicide they met at the house of the father of deceased, where the prisoner was an occasional friendly visitor. An altercation ensued between the prisoner and the deceased in the lot, and in presence of the father of the deceased, in which violent words of crimination and recrimination were reciprocally used between the parties. The father ordered the prisoner away, and he left the yard and went out into the road, where he continued violently to denounce the deceased; the latter following him and threw a stone at him, when the deceased, approaching the prisoner, went out of the gate, the prisoner turned and they grappled each other in a struggle, in which both fell to the ground, the prisoner being underneath the deceased. At the instant of the collision, the prisoner stabbed the deceased several times—twice through the heart—and when the deceased was taken off of the prisoner, he, the deceased, was dying, and in a few moments expired.

This is a general summary of the material facts in the case. To show the animus of the prisoner,

and to illustrate the merits of the plea of self-defense, the court admitted, under objection, proof of the old feud, and of the frequent and deadly threats of the prisoner to take the life of the deceased. The court also charged the jury as to every grade of homicide, and in both it is insisted that he erred. In view of the fact that he distinctly and clearly charged the jury that the prisoner was upon trial for manslaughter, and that having been acquitted of the higher grades of homicide, he could not be convicted of either of them, we cannot hold that the court erred in admitting the evidence. The threats were mutual between the parties, and an unrestrained history of the feud was perhaps necessary to illustrate the conduct of the parties under the plea of self-defense. The question was whether the killing was in self-defense or without malice. How could the jury better resolve this question than by an inquiry into the motives of the prisoner, to be deduced from his actions? Was he leaving the place in an honest effort to avoid a difficulty, or was he lingering about the gate to provoke, by vituperation, a collision with the deceased. If the latter hypothesis be the true one, then the jury which, forbidden by the law to return a malicious killing, could, nevertheless, most advisedly ignore any just foundation for the plea of self-defense. While the charge upon the higher grades of homicide may be superogatory, yet is not erroneous. Upon the whole matter it is perhaps safe in such case to enlighten the jury as to all other grades of homicide, that they may the better comprehend the precise crime with which

the prisoner is charged, provided it be accompanied, as in this case, with a distinct admonition that the prisoner cannot be convicted of any higher grade than that upon which he is arraigned.

Affirm the judgment.