### A. L. RUTHERFORD *v.* THE STATE.

CRIMINAL LAW. *Proof of name of deceased.* The failure of the witnesses, on a trial for the murder of a particular individual, to give the full name of that person as set out in the bill of indictment, is not material after verdict, if the name or description as given by the witness corresponds as far as it goes with the name mentioned in the indictment, it sufficiently appearing that there was no contest over the name or identity of the person.

#### FROM TIPTON.

Appeal in error from the Circuit Court of Tipton county.    T. J. FLIPPIN, J.

SIMONTON, YOUNG & BLACKWELL and J. H. LAUDERDALE for Rutherford.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The prisoner was tried upon an indictment for murder in the first degree, and was convicted of the crime of involuntary manslaughter. He has appealed in error.

The evidence in the bill of exceptions would have justified a conviction for a higher grade of homicide. Upon this ground, the prisoner's counsel bases an argument for reversal.    But a criminal person may be holden for any crime, of whatever nature, which can be legally carved out of the act.    If the evidence

show him to be guilty of a higher offense, or of a lower, or of one differing in nature, whether under a statute or at common law, he cannot be heard to complain; the question being whether it shows him to be guilty of the one charged: 1 Bish. Crim. Law, sec. 791; *Wright* v. *State*, 8 Lea, 568. Manslaughter is merely a lower grade of homicide: Bish. Crim. Law, sec. 780. And, by statute, on an idictment for a public offense admitting of degrees, the defendant may be convicted of any degree lower than that charged in form: Code, secs. 5122, 5222. The defendant may, therefore, be convicted of manslaughter, though murder be shown: *Commonwealth* v. *McPike*, 3 Cush. 181; *Barnett* v. *People*, 54 Ill. 325. And found guilty of manslaughter under an indictment for murder.

Another error assigned is in the exclusion by the trial judge of the testimony of a particular witness, who stated that he met the person killed shortly before the difficulty with the defendant, and that he was then in a high state of excitement in regard to a fine imposed upon him that morning in the police court. But neither the interview, the excitement of deceased, or the conversation of the witness was shown to have any connection with the defendant, or his subsequent fatal rencounter with the deceased. The testimony was properly rejected.

It is next urged that the indictment against the defendant is for killing John Bledsoe, whereas the evidence shows that the person killed was named John. The witnesses in the bill of exceptions are made to speak of the person killed as either John or the de-

ceased. Both the prisoner and the deceased were ne-
groes in menial service, as to which class of the com-
munity it is the custom to speak of or to indviduals
by using the christian name alone. The prisoner him-
self is named Abraham Lincoln Rutherford, but is
known and almost uniformly mentioned in the record
as Link. There was no contest over the identity of the
person killed, the witnesses whenever they mentioned
his name did so by calling him John. That was the
christian name of the murdered man as mentioned in
the indictment.

In the first case in our reports on this point, the
prisoner was indicted for the murder of William Tram-
mel. On the trial, the witness spoke of the mur-
dered man as Trammel or the deceased, without men-
tioning his christian name. The court said of the
objection made on account of the . variance : " We
think this objection entirely too technical, and in-
sufficient in reason or law, as a ground upon which
to disturb the verdict. * * * It does not appear
that any question was made as to the given name of
the deceased. * * The witnesses all referred to the
deceased as Trammel, or the man that was slain, and
for the murder of whom the defendant was on trial.
The jury certainly had proof enough to find that the
man upon whom the murder was committed was named
William": *Joyce* v. *State,* 2 Swan, 667. In a subsequent
case, the prisoner seems to have been indicted for mur-
der " of his wife, Agnes Stuart." None of the witnesses
spoke of the person killed as Agnes Stuart, but as Mrs.
Stuart, or the prisoner's wife. The omission or vari-

ance was held to be of no consequence after verdict, referring to. the case above: *Stuart* v. *State,* 1 Baxt. 178. In a still later case, the indictment charged the killing of D. Oliver. The proof showed that the person killed was named DeWitt Oliver, one witness so naming him, while all the other witnesses spoke of him as Oliver. "No question," says the opinion, "was raised as to his name, so that if his given name had been entirely omitted in the evidence, after verdict no question could be raised upon it. His identity was well established as the person slain by the defendant": *Scott* v. *State,* 7 Lea, 232. These cases conclusively determine that an omission to set out the full name of the party killed in the bill of exceptions, or the failure of the witnesses to give the full name, is not material after verdict, if the name or description as given by the witnesses corresponds as far as it goes with the name mentioned in the indictment, it sufficiently appearing that there was no contest over the name or identity or the party. The principle covers this case: *Timms* v. *State,* 4 Cold., 138, was treated by the judge who delivered the opinion as a case of positive variance, although it may be doubted whether the facts justified the conclusion.

There is no error, and the judgment must be affirmed.