THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, v. EGBERT PALMER, APPELLANT.

*Power of the court in a criminal action to allow a jury to view the premises — Code of Criminal Procedure, secs. 411, 412 — it cannot be done in the absence of the defendant and his counsel — autre fois acquit — assault in the first degree; in the third degree — court for the trial of — punishment for.*

Upon the trial of the defendant before the Court of Sessions of Greene county, upon an indictment charging him with an assault in the first degree, committed

by wilfully and feloniously discharging a loaded pistol or revolver at one Ira Gray, it appeared that the assault was committed at a saloon or liquor store, in the village of Catskill, kept by one Hallenbeck. Upon the application of the defendant's counsel, and with the assent of the district attorney, the county judge decided to allow the premises where the crime was committed to be viewed by the jury, the judge and two officers, but refused to permit the defendant or his counsel to accompany them. After reading to the jury sections 411 and 412 of the Code of Criminal Procedure, providing for a view of the premises and the manner of conducting the same, the county judge, the jury and the two officers left the court-room. On their return the judge stated that the jury had been to the store or saloon of Hallenbeck Brothers, and that all places mentioned by counsel had been examined by the jury, who had full opportunity to thoroughly view the place, and that the jury had not been allowed to communicate with one another, or to hold any conversation with any person outside.

*Held,* that section 3 of article 1 of the Constitution, providing that "in any trial, in any court whatever, the party accused shall be allowed to appear and defend in person and with counsel, as in civil actions," gave to the defendant a right to appear and defend, in person and with counsel, in every part of the trial, and that it forbid the hearing by the jury of any evidence, in the absence of himself and his counsel, without his consent. (Per LEARNED and BOCKES, JJ.)

That as evidence was, in this case, given to the jury, in the absence of defendant and his counsel, the judgment should be reversed. (Per LEARNED and BOCKES, JJ.)

After a prisoner, indicted for a crime in the first degree, has been convicted of that crime in the third degree, and such conviction has been reversed on appeal, the prisoner, having been acquitted of the crime in the higher degree, cannot, under section 36 of the Penal Code, "be thereafter indicted or tried for the same crime in any other degree." (Per BOCKES, J.)

An appeal or motion for a new trial does not operate as a waiver by the defendant of his constitutional protection, as to those charges as to which he has been acquitted.

Under an indictment for an assault in the first degree a verdict of assault in the third degree may be received in the Court of Sessions, under section 444 of the Code of Criminal Procedure, notwithstanding the exclusive jurisdiction conferred by section 56 of the Penal Code, in certain cases (including assault in the third degree), upon the Court of Special Sessions.

*Quære,* whether section 717 of the Code of Criminal Procedure has not "specially prescribed," within the meaning of section 15 of the Penal Code, a punishment for the offense of assault in the third degree, which must be the punishment to be imposed therefor in all courts, although said section 717 has special application to the Courts of Special Sessions. (Per BOCKES, J.)

APPEAL by the defendant from a judgment convicting him of the crime of assault in the third degree, rendered against him by the Court of Sessions, held at Catskill, Greene county, April 21, 1886.

The defendant was indicted at the Greene County Oyer and Terminer, December, 1885, of assault in the first degree. The sub-stance of the charge was that the defendant shot at and wounded one Ira Gay, at the saloon of Hallenbeck Brothers, in Catskill, in the evening of October 2, 1885. It appears from the printed case that after the people had rested the following proceedings were had:

By Defendant's Counsel — The defendant, by his counsel, now requests that the jury be allowed to view the place in which the crime is charged to have been committed and as to where the material facts occurred, and requests the court to order it under section 411 of the Code of Criminal Procedure. (Here the judge and justices of sessions confer together.)

By the Court — So far as the court is concerned, I will permit the jury to view the premises if it is thought necessary.

District Attorney — So far as we are concerned, we are perfectly willing the jury should examine these premises thoroughly.

By the Court — I will allow it; that there may be no misunder-standing on the part of the jurors, I will read the section of the Code for your consideration: "411. When, in the opinion of the court, it is proper that the jury should view the place in which the crime is charged to have been committed or in which any material fact occurred, it may order the jury to be conducted in a body, under the charge of proper officers, to the place, which must be shown to them by a judge of the court or by a person appointed by the court for that purpose."

I will also read section 412 of the Code, in which is pointed out the duty of the officers as to the jury, which reads thus: "The officers mentioned in the last section must be sworn to suffer no person to speak to or communicate with the jury nor to do so them-selves on any subject connected with the trial, and return them into court without unnecessary delay or at a specified time." It appears that you are to hold no conversation with any person outside nor with yourselves while going to or returning from the place, nor while there, on any subject connected with the trial. Defendant's counsel requests the court to allow the attorneys for the defense to accompany the court and jury to the place of the alleged offense, and also that the justices of sessions be allowed to accompany the jury as well.

By the Court — I am going to keep myself within the language of the statute. [The court here reads from section 412 of the Code of Criminal Procedure.] I will allow only the two officers, myself and the jury to go. (To which defendant excepts.)

Defendant's Counsel — I ask the jury, each one, to examine the right-hand side of the back door, the casing where it comes down twenty inches above the floor, and see if they can find a bullet shot there.

District Attorney — The district attorney objects to the defendant's counsel instructing the jury.

By the Court — I will not allow any speeches.

Defendant's Counsel — The defendant's counsel requests of the court the privilege of mentioning to the jury certain points and marks at the place within the room where the affray occurred, and of requesting them to especially notice and examine such particular points at the time of their viewing the premises.

By the Court — I shall allow no one to go with the jurors except the two officers and myself. The clerk will swear the officers. (The oath is administered by the court.)

By the Court — One officer will go ahead of the jurors and the other follow them.

The county judge, the two officers and the jury leave the court-room. On their return into the court-room the judge states : " The jury have been up to the place, store or saloon of Hallenbeck Brothers. All the places indicated by counsel were examined by the jurors, and the jury had full opportunity to view the place 'thoroughly. All persons were excluded from the room except Hallenbeck Brothers, and the jurors, in going to and returning from the place, were preceded by one of the officers and followed by the other, and were not allowed, in going to and returning from 'the place, or while there, to comunicate with one another or hold any conversation with any person outside."

Defendant's Counsel — And that was done in the absence of the defendant and his counsel and of the sessions justices.

By the Court — It was done in their absence.

Defendant's Counsel — Who were not permitted to accompany them.

By the Court — I will allow, the defendant and his counsel were

not permitted to accompany the jury. (To which defendant's counsel excepted.)

Defendant's Counsel — And in the absence of the sessions justices who were not permitted to accompany the jury.

By the Court — The sessions justices did not accompany the court and jury in viewing the premises.

*S. Crowell*, for the appellant.

*Augustus Sherman*, district attorney, for the respondent.

LEARNED, P. J. :

The Constitution says that "in any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel, as in civil actions." (Const., art. 1, § 3.) This gives him a right to appear and defend in person and with counsel in every part of the trial. It forbids the hearing by the jury of any evidence in the absence of himself and his counsel, without his consent. This right is again stated in section 8, Code Criminal Procedure. And probably no one would doubt that to give evidence to a jury in the absence of a prisoner, and without his consent, would violate the Constitution, and that a verdict so obtained could not stand.

Then the question is : Was evidence given to the jury in this case, in the absence of the prisoner? One member of the court and two officers, sworn according to section 412 of that Code, went out from the court-room. The two other members of the court and the prisoner and his counsel remained. The prisoner asked to accompany the jury, but this was refused. On returning, the member of the court who had gone with them stated that the jury had been up to the place, store or saloon of the Hallenbeck Brothers, and that all places mentioned by counsel had been examined by the jury; that the jury had not been allowed to communicate with one another, or hold any conversation with any person outside.

The view of the place was itself evidence. It might be very important for the jury to know the size of the room. For instance, the defendant might have testified that the room was not more than ten feet long, and that the complainant, standing at one end, had struck with a stick the defendant, standing at the other. The jury

may have been shown a room twenty feet long. And the length of the room would tend to discredit defendant's testimony, and would be material evidence whether the affray arose as defendant claimed.

It is not an answer to this argument to say that there could be no doubt as to the size of the room by those who were allowed to see it; because the principle is not that no *false* evidence shall be given in defendant's absence, but it is that no evidence, *true* or *false*, shall be so given. Hence, if the size and appearance of the room tends in any way to bear upon the question of the defendant's guilt or innocence, it is evidence, and must not be given to the jury in his absence. Bullet holes and splashes of blood might be in the room, and their position might bear strongly on the guilt or innocence of the prisoner. In this very case importance seems to have been attributed to the existence, or non-existence, of a bullet-hole at a certain place in the room. If it would have been evidence to testify that there was such a bullet hole, then it was giving evidence to show to the jury the bullet hole itself.

But again, either by words, or by gestures, or by the mere fact that they were taken to a certain room by the officers and the member of the court, the jury were informed that that room was the place where the affray happened. Now, in the first place, this was unsworn evidence. No one stated to them under oath that that was the place of the affray. If on a trial any articles are to be exhibited to the jury, as, for instance, the clothes of a murdered man, the pistol of the murderer, and the like; before they can be given in evidence proof must be given in respect to them. Some one must, on oath, identify them as being what they are alleged to be. But there was no identification of the room shown to the jury. Did any one testify before the jury, " This is the saloon of Hallenbeck Brothers ?" If so, then that evidence was given in defendant's absence; if not, then the room was shown without identification by sworn testimony. But, in the next place, the defendant has had no opportunity of denying that the room shown was that saloon. What knowledge has he as to the place to which the jury were taken ? They may have been taken to another room distant from the place of the affray. He has no means of knowing where they went.

Suppose it were in dispute whether the affray occurred in one

room or in another of a house. Can it be permitted that the jury shall be shown by two officers and one member of the court, in the defendant's absence, such room as they may think best to exhibit, and that the defendant shall thus be kept in ignorance what room was so exhibited? For, unless the defendant is present, he cannot know what room was exhibited. Could the alleged clothes of a murdered man, or the alleged pistol of the murderer, be exhibited to a jury at some place outside of the court-room and in the absence of the defendant? If the defendant had been present, he might have denied that the room exhibited was the place of the affray. He might have called witnesses to show this. But, as it is, he cannot, because he does not know what room was exhibited. True the judge who accompanied them said, on his return, that they had been taken to the saloon of Hallenbeck Brothers. But how did the defendant know what place the judge and the two officers believed to be that saloon?

The Code of Criminal Procedure (§ 411) seems to intend that a judge of the court, or a person appointed for that purpose, should show the place. How it was supposed that a judge of the court would know the place where the crime is alleged to have been committed is not very clear. He might, perhaps, have a familiarity with the descriptions given by witnesses, so that, to his own satisfaction at least, he would be able to identify the place. But it will be seen that he (or the person appointed) is to show the place to the jury. Hence, from this word, it is evident, as was above stated, that the judge must convey to the jury, probably by words, his conviction that the place actually before them is that where the affray took place. The next section (412) probably is not to be construed to prevent this communication with the jury. And thus we have evidence given to them in the defendant's absence, viz., that the place shown is that referred to by witnesses in describing the affray. Once more, whenever articles are exhibited to a jury, the inquiry is, or may be made, are they in the same condition as they were at the time of the alleged crime? How is the defendant, not permitted to see the place as it is shown to the jury, how is he to know whether the place, as exhibited, is just in the condition that it was at the time of the affray? He is shut out from the opportunity of giving evidence upon this point, because he is confined in the court-

room while some member of the court is showing the supposed place to the jury, and, therefore, does not know how the place now is. Reference is made to the old system of "views" in England. (3 Blackstone's Com., 358) But it is to be observed that these were granted in civil actions, and that they preceded the trial, as will more fully appear in 1 Burr, 252. And at page 256 of that same volume, it will be seen that, under the regulations of the court respecting them, there was to be an appearance at the view of a person on the part of the plaintiff and another on the part of the defendant, so that nothing was done in the absence of the parties or their representatives. We need not consider whether a proceeding of this kind might not take place on a civil trial. (Code Civil Pro., § 1659.) We have only to confine our attention to the present case.

The judgment should be reversed, and a new trial granted.

BOCKES, J. :

(1.) The verdict of the jury was guilty of assault in the *third* degree. This verdict, in legal effect, acquitted the defendant of assault in the *first* degree, to wit: of an assault with intent to kill Gay, or to commit a felony upon his person. (*Guenther* v. *The People*, 24 N. Y., 100 ; *The People* v. *Dowling*, 84 id., 478.) And such verdict was authorized under section 444 of the Code of Criminal Procedure, which provides that "upon an indictment for crime, consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the crime." It is urged that to uphold a conviction for a lesser degree of crime than that charged in the indictment, it must be for the identical act alleged therein. The law is this : That the accused cannot be convicted of any other character of offense than that charged against him in the indictment. (*Dedim* v. *The People*, 22 N. Y., 178 ; *Keefe* v. *The People*, 40 id., 348.) But he may be convicted of an inferior grade of the same offense charged, growing out of the same transaction counted on, accordingly as the case may be disclosed by the proof. As said in one of the cases cited : "So far as the proof goes, it conforms to the allegations. Simply the whole indictment is not found, but the principle applies that it

is enough to prove so much of the indictment as shows that the defendant has committed a substantial crime therein specified." So here the defendant might be convicted of any degree of assault inferior to that charged in the indictment, the grade of offense to be determined by the proof. An assault was charged with aggravation. Failing to prove the aggravation left the charge of assault still remaining, but of lesser degree of offense. To uphold a conviction for the inferior degree the aggravating circumstances charged will be deemed surplusage. It was, therefore, competent for the jury, under the indictment in this case, to convict the defendant of assault in the third degree.

(2.) It is, in the next place, urged that the Court of Oyer and Terminer, in which the indictment was found, had no jurisdiction over the offense of which the defendant was convicted, and that the conviction for that offense in the Court of Sessions was also without authority and void. This objection is based on section 56 of the Code of Criminal Procedure, which provides that, "subject to the power of removal provided for in this chapter, Courts of Special Sessions, except in the city and county of New York and the city of Albany, have in the first instance exclusive jurisdiction to hear and determine charges of misdemeanor committed within their respective counties, as follows: * * * 2. Assault in the third degree." The limitation here declared applies to cases where the complaint or charge is made to the Court of Special Sessions in the first instance, that is, where this minor offense is that which is sought to be redressed ; and so, too, where the minor offense is sought to be redressed by indictment for it in the Oyer or Sessions (not having been certified there under section 57 of the Code of Criminal Procedure), the subject would be, by the grand jury or by the court in giving directions to that body, turned over to the Court of Special Sessions, which court has exclusive jurisdiction of it on such complaint in the first instance. But if the complaint be for a higher offense, and it be sustained by indictment, then the Oyer and Court of Sessions, in case the indictment be found in the latter court or be sent there by the Oyer, would have jurisdiction ; and section 444 of the Code of Criminal Procedure, which authorizes a conviction for an offense inferior in degree to that charged in the indictment, would apply. This construction

harmonizes the two sections, 56 and 444, above cited, and gives effect to each, and it must be accepted, in preference to that construction, which would render either nugatory in whole or in part. It also recognizes as effective section 445 of the Code of Criminal Procedure, which declares that "In all other cases " — cases other than those specified in section 444 — " the defendant may be found guilty of any crime the commission of which is necessarily included in that with which he is charged in the indictment;" and also section 35 of the Penal Code, which declares that " Upon the trial of an indictment, the prisoner may be convicted of the crime charged therein, or of a lesser degree of the same crime." (Id.) Nor, in this connection, should section 36 of the Penal Code be overlooked, which declares that " Where the prisoner is acquitted or convicted upon an indictment for a crime consisting of different degrees, he cannot thereafter be indicted or tried for the same crime in any other degree." (Id.) Thus in this case, unless the defendant may be held to punishment on the verdict here rendered, he must go free and unpunished for the offense of which he is convicted. Our conclusion, therefore, is that the verdict rendered in this case is not without authority, and void for want of jurisdiction in the Court of Sessions to receive it and make it the basis of punishment if upheld as provided by law (as to which see hereafter).

(3.) It appears that during the trial the defendant asked that the jury be permitted to view the place where the crime was charged to have been committed, as provided for in section 411 of the Code of Criminal Procedure. No objection on the part of the people was made, and the court decided to allow the jury to make view as was requested. The defendant thereupon requested that he, with his counsel, be allowed to accompany the jury. This request was denied, the judge holding that he would allow *only* the two officers, himself and the jury to go. Under such holding the view was made by the jury under the charge of two officers, sworn for the purpose, accompanied by the county judge. The point of exception, as made in the appeal book, is this, that the defendant with his counsel was not permitted to accompany the judge and jury. It may be conceded that the proceeding to make view was not strictly a proceeding in court. This is, I think, fairly inferable from the language of the section itself permitting it, as also from

the following section 412. (See, also, sub. 2 of § 465.) But this conclusion does not reach and answer the objection urged. The proceeding was the obtaining of evidence in the case, and its presentation to the jury during the trial; hence, in effect, it was part of the trial. The view is referred to as "evidence" in the subdivision of section 465, above cited, and it was permitted as evidence for the consideration of the jury and to influence their action in the determination of the case, so it must be deemed "evidence" in the nature of things. (See *Eastwood* v. *The People*, 3 Park. Crim. R., on page 53; also *West* v. *Kiersted*, 15 N. Y. Weekly Dig., 549.) On this point I differ from *Shuler* v. *The State* (105 Ind., 289), and the cases there cited in its support, and concur in those holding to the contrary, also there cited, to which latter cases attention is called. It must be held, as I think, that the making view by the jury was part of the trial in so far as it involved the right of the defendant to be present when "evidence" is given or is obtained for use in the case. So the defendant had the right to be present when evidence was put in or laid before the jury touching his guilt or innocence. This is secured to him by law. (Code of Crim. Pro., § 356; also sub. 3 of sec. 8; see, also, sec. 6 of art. 1 of State Constitution.) But, irrespective of the provisions of the Code and Constitution above referred to, the right of the defendant to accompany the jury existed on general principles applicable to the trial of causes in the admission of evidence. The defendant might object to the introduction of a diagram as evidence, unless verified in its correctness and put before the jury in his presence or in open court; and this for the reason that he should have opportunity to show by proof that it was incorrect, defective or misleading. So here he should be allowed to be present when the judge or person appointed for the purpose pointed out the place to the jury, to the end that he might, if needful, correct any error in that regard by proof to be submitted to the jury, showing the error or, perchance, changes and alterations made subsequent to the transaction under investigation. Thus, according to the general rule of right applicable to the admission of evidence, the defendant should be allowed to attend the jury when making view, not for the purpose of then and there raising objections or making any suggestions, but to the end that he might correct by proof in court

any misleading fact, if any should exist, growing out of the view by the jury. It follows that the court was in error in refusing to permit the defendant, with his counsel, to accompany the jury when making view of the place where the alleged offense was committed, and for this error the conviction and judgment must be reversed.

(4.) I am also of the opinion that there was error in the sentence. The sentence here pronounced was authorized by section 15 of the Penal Code, in case there was no other punishment for this offense — assault in the third degree — specially prescribed by any other statutory provision in force at the time of the conviction and sentence; but there was another punishment for this offense prescribed by a statutory provision then in force, to wit, that prescribed by section 717 of the Code of Criminal Procedure. By this section the fine was limited to fifty dollars and the imprisonment to six months. That this section has special application to Courts of Special Sessions does not alter the fact that punishment for this offense — assault in the third degree — is specially prescribed by a statutory provision in force at the time, other than that declared in section 15. Section 717 should be held to control the sentence; and this, on a question of construction of statutes, should be so held for the sake of uniformity in the administration of justice. To permit the punishment for the same offense to differ in severity accordingly as the conviction should be had in different courts is repugnant to one's sense of propriety and right. Perhaps this error might be corrected on appeal under section 543 of the Code of Criminal Procedure. I think otherwise, however, as the extent of punishment rests, within the limitation prescribed by law, with the trial court in its discretion. But as there must be a reversal of the conviction, for the reason above suggested, this point need not be here determined.

(5.) But I am of the opinion that the defendant must be discharged. The verdict in this case operated as an acquittal of the defendant of the higher offense charged in the indictment (*People* v. *Darling*, 84 N. Y., 478), and in case the judgment be reversed, and a new trial be granted, the defendant could not, as the law was there declared, be again tried and convicted of those higher offenses. As to them, *autrefois acquit* would be a good defense. This is decided in the case above cited, and the new trial could be only for the lesser

offense, here assault in the third degree. But it is now provided by section 36 of the Penal Code that, "where a prisoner is acquitted or convicted upon an indictment for a crime consisting of different degrees, he cannot thereafter be indicted *or tried* for the same crime *in any other degree,* nor for an attempt to commit the crime so charged, or any degree thereof." Now here the defendant has been acquitted of the higher crimes charged in the indictment; hence he cannot, according to this section, be tried for those crimes " in any other degree." *Ita est scripta.* In this connection, section 544 of the Code of Criminal Procedure should be noticed, which provides that " when a new trial is ordered, it shall proceed in all respects as if no trial had been had." But here, according to section 36 of the Penal Code, above cited, a new trial should not be, indeed, cannot be, legally ordered. Section 544 applies to those cases where a new trial may properly be ordered. In passing, it may be well to remark that section 464 of the Code of Criminal Procedure, which provides that " the granting of a new trial places the parties in the same position as if no trial had been had," etc., has no application to cases brought before this court on appeal. That section applies to new trials granted by the court in which the former trial was had, and the application for such new trial must be made before judgment, except in a case of sentence of death. (Code of Crim. Pro., §§ 462 to 466, inclusive.) Thus it seems that section 36 of the Penal Code is left in full vigor, according to its text. It follows that the acquittal of the defendant of the higher offense charged in the indictment disposes of the case; a reversal being ordered, leaves nothing on the record against him for retrial.

In any event, the defendant could only be held to a retrial for assault in the third degree, even if section 36 of the Penal Code was out of the way, and effect should be claimed for section 544 of the Code of Criminal Procedure. It was so held in *The People* v. *Gilmore* (4 Cal., 376). The Criminal Code of the State of California provides, as does our section 544, above cited, that the granting of a new trial places the parties in the same position as if no trial had been had. It was urged in the case cited that this provision, a new trial being granted, opened the entire charges in the indictment for retrial, as well those as to which there had been an acquittal as those on which there had been a conviction.

The court held against this contention.  It held that such provision went only to the needs of the defendant, as against the conviction ; that if it should be construed to be more extensive in its application and effect, then it would be in conflict with the Constitution, which protects one from being twice put in jeopardy for the same offense ; and, further, that an appeal or motion for a new trial would not operate as a voluntary waiver by the defendant of his constitutional protection as to those charges as to which he had been acquitted. To the same effect is the decision in *The People* v. *Dowling* (84 N. Y., 478, 483, 484).  Judge FOLGER says the waiver of constitutional protection, "unless it be expressly of the benefit of the verdict of acquittal, goes no further than the accused himself extends it.  His application for a correction of the verdict is not to be taken as more extensive than his needs.  He asks a correction of so much of the judgment as convicted him of guilt.  He is not to be supposed to ask correction or reversal of so much of it as acquitted him of offense.  He, therefore, waives his privilege as to one and keeps it as to the other   *   *   *   The waiver is construed to extend only to the precise thing concerning which the relief is sought."  In this case the defendant has expressly limited the relief sought, by his notice of appeal, which goes only to the conviction of assault in the third degree, leaving the acquittal of the higher offense uncomplained of and untouched.  Thus section 544 would be held to be unconstitutional and void, if, by its terms, it extended to the acquittal in this case.  In no view of the case can the defendant be held to a retrial, save for an assault in the third degree.

I am, however, of the opinion that he is entitled to be discharged by force of section 36 of the Penal Code, above cited.  As I conclude, the conviction and judgment should be reversed, and the defendant discharged.

Landon, J., was of the opinion that (a reversal being ordered) a new trial might be had.

Conviction and judgment reversed, and new trial granted on questions of law only.