ROSCOE REAGAN *v.* THE STATE.*

(*Nashville.*   December Term, 1926.)

Opinion filed May 9, 1927.

1. **CRIMINAL LAW. Homicide. Conviction of a lower grade an acquittal of the higher grade.**

Upon a fiction of a law the rule has been established in this State that a conviction of a lower grade of homicide operates as an acquittal of the higher grade, and where a new trial is granted the defendant cannot be put to trial for a higher grade than that for which he was convicted on the first trial.   (Post, p. 400.)

Citing: Rutherford v. State, 79 Tenn., 31, and cases there cited.

2. **SAME.   Same.   Same.   Charge of court.**

It is not error to charge the higher grades, although the jury were precluded from finding defendant guilty of any at such grades; such charge enabling the jury to determine whether an offense had been committed in a legal sense.   (Post, p. 402.)

Citing: Goaler v. The State, 64 Tenn., 678.

3. **SAME.   Same.   Same.**

A verdict for a lower grade does not necessarily mean that the accused is not guilty of a higher degree of crime.   (Post, 462.)

Citing: Bish. Crim. Law, secs. 780-791; Wright v. State, 8 Lea 568; Commonwealth v. McPike, 3 Cush. 181; Barnett v. People, 54 Ill. 325. Code sec., Shannon's Code, sec., 5122-5222.

---

*Headnotes 1. Homicide, 29 C. J., section 45; 2. Criminal law, 16 C. J., section 436; 3. Homicide, 30 C. J., section 722; 4. Homicide, 30 C. J., section 712; 5. Homicide, 30 C. J., section 570.

---

FROM PICKETT.

---

Appeal from the Criminal Court of Pickett County.— HON. J. R. MITCHELL, Judge.

TURNER & CULLOM, and WHITE & McDONALD, for Reagan.

ROY H. BEELER, Assistant Attorney-General, for the State.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The plaintiff in error, Roscoe Reagan, has appealed from a judgment sentencing him to the penitentiary for one year for involuntary manslaughter.

On Sunday night, September 1, 1906, the plaintiff in error, Lute Clark and Jim Martin Gillentine, referred to herein as the defendants, borrowed three guns, secreted themselves under some trees on the side of the road and when George Manis, Orville Huddleston, Virgil Beatty and John Buck rode by on their horses fired into them, killing George Manis and wounding the other three.

The three defendants left that night or the next day for parts unknown. They were jointly indicted for murder in the first degree for killing George Manis. Clark has never been apprehended. Gillentine was arrested in Oklahoma two or three years later, and upon the third trial was acquitted. There is no proof that he fired a shot. He admits that he swore falsely on the trial of his case. The jury would have been justified in rejecting his testimony entirely. He testified for the plaintiff in error, and their testimony conflicts in several important particulars.

The plaintiff in error voluntarily returned to his family in Pickett county in 1923, after the death of all four of those shot. He was placed upon trial and convicted of involuntary manslaughter. Upon appeal his case was

reversed for error in the verdict. He was again convicted, as previously stated.

The defense interposed was that as plaintiff in error and Gillentine were on their way to church that night about 6:30 they saw Manish and associates in Mrs. Katie Clark's field pulling corn, and that they put in the next three or four hours borrowing guns and seeking aid to assist them in arresting these parties. The only aid secured was that of Lute Clark, a grandson of Mrs. Katie Clark, who had engaged in a difficulty with these parties that afternoon, and who advised the plaintiff in error of the difficulty before the shooting occurred.

The theory of the State is that defendants were either avenging Lute Clark's grievance, or attacked the parties because of their attention to some women of loose virtue in the Foster home.

After arming themselves defendants went to the home of Rube Clark, about 125 yards from the Foster home, where they waited for these parties, who were at the latter place, and first undertook to intercept them as they passed the home of Rube Clark. They got away, but defendants, by traveling a cut-off way, got ahead of them before they reached the base of the mountain, and shot into them, as above stated.

After carefully considering the testimony, we think the jury was well warranted in rejecting the theory of the plaintiff in error. It is flimsy, unreasonable and supported only by the testimony of Gillentine. The plaintiff in error contradicts himself, is contradicted by Gillentine, and by Mose Clark and Mary Clark. The fact that the plaintiff in error fled and absented himself from his family and home for more than seventeen years is a strong circumstance of guilt.

Having rejected the theory of arrest for the theft of two armsful of corn, when the activities of the defendants in obtaining guns are considered (plaintiff in error obtained the rifle of Mose Clark by artifice), the fact that neither the plaintiff in error or Gillentine were officers or related to Mrs. Clark; that Mrs. Clark's two sons, Mose and Rube, refused to assist in this undertaking, and that the defendants secreted themselves under trees beside the road, the jury was justified in finding that they entered into an unlawful conspiracy, and it made no difference whether the plaintiff in error fired his gun at Manis, or up in the air, he would be guilty. *Strady* v. *State,* 45 Tenn., 308; *Moody* v. *State,* 46 Tenn., 305.

This record would support a conviction for a higher grade of homicide than involuntary manslaughter.

Upon a fiction of law the rule has been established in this State that a conviction of a lower grade of homicide operates as an acquittal of the higher grades, and where a new trial is granted the defendant cannot be put to trial for a higher grade than that for which he was convicted on the first trial.

Perhaps in most jurisdictions, where a new trial is granted, the accused is retried upon the original charge. But a verdict for a lower grade of homicide does not necessarily mean that the accused is not guilty of a higher degree of crime.

In *Rutherford* v. *The State,* 79 Tenn., 31, this court said:

"The prisoner was tried upon an indictment for murder in the first degree, and was convicted of the crime of involuntary manslaughter. He has appealed in error.

"The evidence in the bill of exceptions would have justified a conviction for a higher grade of homicide. Upon this ground, the prisoner's counsel bases an ar-

gument for reversal. But a criminal person may be holden for any crime, of whatever nature, which can be legally carved out of the act. If the evidence show him to be guilty of a higher offense, or of a lower, or of one differing in nature, whether under a statute or at common law, he cannot be heard to complain; the question being whether it shows him to be guilty of the one charged: 1 Bish. Crim. Law, sec. 791; *Wright* v. *State,* 8 Lea, 568. Manslaughter is merely a lower grade of homicide: Bish. Crim. Law, sec. 780. And, by statute, on an indictment for a public offense admitting of degrees, the defendant may be convicted of any degree lower than that charged in form: Code, secs. 5122, 5222. The defendant may, therefore, be convicted of manslaughter, though murder be shown: *Commonwealth* v. *McPike,* 3 Cush., 181; *Barnett* v. *People,* 54 Ill., 325. And found guilty of manslaughter under an indictment for murder.''

The jury, by their verdict, said that the plaintiff in error was guilty of the homicide. In fact, there is no theory upon which the plaintiff in error is guilty of technical involuntary manslaughter. He is guilty of a higher degree of homicide, although, for some reason, the jury on the first trial saw fit to convict him of a lower degree, which operated to limit the conviction in this case. But that is a matter about which plaintiff in error cannot complain.

In the first paragraph of the charge the court told the jury that the plaintiff in error had heretofore been tried and acquitted of all grades of felonious homicide except involuntary manslaughter, and that he was now on trial charged only with involuntary manslaughter.

The court stated to the jury that there were four distinct felonies embraced in the indictment for murder, and said:

"I shall now proceed to explain to you what in law it takes to constitute each of these different offenses, so that you may the better understand the offense of involuntary manslaughter."

Error is assigned to the action of the court in charging on the higher grade of homicide, conspiracy and aiding and abetting.

We think this was proper, in view of what we have heretofore said, and are unable to see how it could have misled the jury. The question for the jury to determine was whether plaintiff in error committed the homicide, in a legal sense, although they were precluded from finding him guilty of a higher grade than involuntary manslaughter. Their verdict refutes the idea that they were confused or did not understand the charge. This practice was sanctioned by this court in *Goaler v. The State*, 64 Tenn., 678.

Error is also assigned upon the action of the court in overruling motions for peremptory instructions made by the plaintiff in error when the testimony of the State was concluded, and also at the conclusion of all the testimony.

Without expressing our views upon the propriety of such a practice, it is sufficient to say that the motions were properly overruled because there was sufficient evidence to take the case to the jury. The juries have been exceedingly lenient with the plaintiff in error, more so than the facts justified.

We find no reversible error in the record, and the judgment of the trial court will be affirmed.