CONDON GRAHAM and GEORGE HUTCHESON

*v.*

STATE OF TENNESSEE.

404 S.W.2d 475.

(*Knoxville,* September Term, 1965.)

Opinion filed June 3, 1966.

454

Joe J. Wild, Jr., and Carter Schoolfield, Chattanooga, and William C. Wilson, Nashville, for plaintiffs in error.

George F. McCanless, Attorney General, and Thomas E. Fox, Assistant Attorney General, for the State. Edward E. Davis, District Attorney General, Chattanooga, prosecuted case for the State in trial court.

Mr. Chief Justice Burnett delivered the opinion of the Court.

Plaintiffs in error were convicted of petit larceny and sentenced to serve one year in the State penitentiary. From this conviction they have seasonably appealed, and in their brief and assignments of error they have assigned ten errors, which are properly summarized by the State thus:

"(1) The evidence preponderates against the verdict and in favor of the innocence of the accused.

"(2) The evidence relied upon by the State was obtained by means of an unlawful search and should have been suppressed.

"(3) The District Attorney General in his argument stated to the jury that the defendants were professional criminals.

"(4) The trial judge should not have charged the jury relative to grand larceny since only petit larceny was alleged.

"(5) The jury should not have been instructed regarding the offense of receiving and concealing stolen property since there was no evidence to support such a charge."

About 10:00 o'clock on the night of August 15, 1964, a Lieutenant of the Chattanooga Police Force while driving his patrol car received by radio a broadcast to the effect that "something like this, attention all cars, be on the lookout for a 1962-63-64 Buick, 4 U 1671 I believe it was, 1671, color light blue, had been involved, at that time we were having a rash of telephone breakins, had been involved in a telephone breakin in Alton Park".

Approximately three minutes after receiving this radio broadcast this policeman was passing St. Elmo Hardware Store when he saw a car of the description described in the broadcast and two men in a telephone booth nearby. This patrolman stated that one of the men was in the booth and the other was "at the door of it with one shoulder under it". After passing this hardware store and going to the front of the next building this patrolman put his car in reverse and backed it up to the place where the car of the men in the telephone booth was sitting. By the time he got back to the car the two men had gotten in their car and were driving out of the driveway leading to the hardware store parking lot. The patrolman blocked their automobile and arrested the two men. This policeman called in additional help after making a preliminary search of the two plaintiffs in error. The plaintiff in error, Hutcheson, was more thoroughly searched after additional police help arrived. When searching Hutcheson more thoroughly he was found to have a number of coins on his person (several hundred dollars) and a telephone lock pick. Prior to the arrival of the additional police help the Lieutenant states that he had some difficulty in controlling Hutcheson who "kept fiddling around".

After this search the policemen found three additional telephone picks where Hutcheson had "been jiggling his hand". After the search of the two men the car was searched and in it the officers found about $300.00 in nickels, dimes and quarters, mostly in dimes. The license plate on the car of plaintiffs in error matched the number given over the patrol radio.

The plaintiff in error, Graham, had a cast on his leg and was driving the car while the plaintiff in error,

Hutcheson, was on the passenger side. Graham was known by the Lieutenant of Police who made the arrest.

The record shows that the telephone booth at the St. Elmo Hardware Store, where these men were apprehended, was about a half a mile from the telephone booth in Alton Park which was mentioned in the radio message. The Police Lieutenant saw the car of the plaintiffs in error within three minutes after this broadcast was made and made the original arrest.

The telephone booth in Alton Park, which was the subject of this radio broadcast, was within a few feet, some fifteen or twenty, of the home of the witness, Jackson, who testified on behalf of the State. This witness said that he saw plaintiffs in error from his front porch when he had gone home the night in question to deliver something to his wife that he had gotten at the store. After he got home he had to knock at the door because the door was locked. He stood there for a few minutes until his wife opened the door, and while there he saw these plaintiffs in error over at this telephone booth; saw one of them take some kind of piece of white cloth and wipe something off and then saw them as they were about to get in their car to leave. He says then he, this witness, went to a nearby restaurant and after about five or ten minutes the car that the two men were in at the telephone booth drove into the restaurant, and at that time he got their license number. This witness then after seeing these things informed the patrolman who was there at the restaurant what he had seen. This patrolman in turn notified the police headquarters of the matter. At the time this witness saw these two men leaving the telephone booth he saw them throw something from their car which apparently didn't get far enough out of the way and

they stopped their car, picked it up and threw it further over into the bushes. The next day this witness went with a City Detective and looked through these bushes and found the object which had been thrown away, which is identified in this record as the top of a coin telephone receptacle.

The record shows by a representative of the telephone company that coins from outside booths were collected at intervals of about thirty-five to fifty-six days apart. The exact date of the previous collection at the Alton Park booth was July 13, 1964, or a little over thirty days before these men were seen at this booth. This telephone man likewise says that the average daily income from August, 1963, to August, 1964 (the year preceding this occurrence) was $1.73 per day. It was thus estimated that the approximate amount in the booth at the time it was robbed by the plaintiffs in error on August 15, 1964, was $57.00. It was for stealing this $57.00 that the plaintiffs in error were indicted and convicted.

The witness who lived near this booth which had been robbed also noticed at the time that one of the two men had a limp and appeared to have a leg in a cast. After the arrest of the plaintiffs in error this turned out to be true because Graham, who was driving the car, did have his leg in a cast. This witness likewise viewed these two men in a police lineup and identified them as the two men at this telephone booth.

Neither one of the plaintiffs in error took the witness stand. A witness though did testify in their behalf, and attempted to explain that the coins in Graham's car were coins that he, this witness who operated a vending machine business which he had purchased from Graham, had

permitted Graham to take and go through because he, Graham, wanted certain coins for a coin collection.

■ After carefully reading this record and considering the matter we are satisfied that the evidence does not preponderate against the verdict and in favor of the innocence of the accused. As shown above these plaintiffs in error were arrested while apparently in the act of burglarizing another telephone booth, the one at the hardware store, only a few minutes after they had burglarized the Alton Park booth. This record shows that one of these plaintiffs in error had a considerable amount of money in small coins on his person which was taken from him at the time he was searched, and these coins were taken out of his pocket after plaintiffs in error were caught in the telephone booth near the hardware store before he had an opportunity to put them away; and then when the automobile was searched many more coins were found. Then, too, when this policeman passed and then stopped and backed up his car these parties attempted to escape, and they were seen to throw something in the bushes which when found was part of a telephone receptacle, which had been taken from the first telephone booth. One of these plaintiffs in error had on his person a telephone pick and the inference could clearly be drawn by the jury that he had tried to dispose of three other picks immediately after he was arrested and before being searched. Another thing that the jury could consider was the fact that these two men were on a tour visiting these telephone booths late at night.

The State concedes that its biggeest problem is in proving that these plaintiffs in error actually obtained the coins from the Alton Park booth, which they were

indicted for robbing. It.seems to us though that the State has shown this by showing the average daily deposits that were in this booth and then by multiplying the number of days between the last time the money was taken out and the date that this robbery took place. When this is taken into consideration it amounts to the amount these men were charged with taking.

Of course, to reach the conclusion that these plaintiffs in error were guilty of larceny it must in effect be predicated in part upon an inference or a presumption that there was money in the Alton Park booth. This seems a reasonable and logical presumption of fact, because the evidence shows that over the period of a year prior to the last time the telephone people took the money out of this booth the money averaged $1.73 a day, thus there is a reasonable inference based on this fact that during that period of time, that is the thirty odd days from the last time the people took the money out until this robbery occurred, the money there would amount to this sum of money. This is not placing a presumption upon a presumption, or an inference upon an inference. This is somewhat like the situation as set forth in Wharton's Criminal Evidence, Vol. 1, page 221, sec 115, when the author of that work says this:

"However, circumstances may be such as to warrant an inference that an established fact must have existed for a definite period, or at a certain time in the immediate past. For instance, where it is shown that a person was assaulted and badly bruised, that the vest pocket where his money was kept was cut out, that nine days before the robbery he had placed the money in his inside vest pocket, and that he habitually kept the money in that pocket, the evidence is sufficient to

establish the fact that the money was there at the time the robbery was committed.''

The State argues that this doctrine has been established in civil matters in various opinions of the Court of Appeals and particularly the case of *Good v. Tennessee Coach Co.,* 30 Tenn.App. 575, 209 S.W.2d 41, wherein that court said this:

"The courts have often responded to this kind of objection to the use of circumstantial evidence. As we have often said, a fact may be inferred from circumstantial evidence and such fact may be the basis of a further inference to the ultimate or sought-for fact.''

█ We think even though this is a criminal case that such rule is applicable here. We are further convinced that this reasoning is sound when we read from Wharton's Criminal Evidence, supra, various sections before and after the section last above quoted from. Such an inference as here must be drawn is to be regarded as a permissible deduction from the evidence before the court which the jury may accept or reject or accord such probative value as it desires.

█ It is very forcibly argued by counsel for the plaintiffs in error that the arrest of plaintiffs in error was illegal and the arrest being illegal the search made of their persons and of the automobile which they had was likewise illegal, and consequently all the evidence obtained as a result of this search should have been suppressed.

In considering this argument though we must take into consideration the fact that the officer had just been notified that someone had broken into a telephone booth a

short distance from where he apprehended and arrested these two men and the description given of the ones who had broken into the Alton Park booth fit the description of the men that he arrested. Thus, it seems to us it was the duty of this officer, after having been notified of this robbery and after having seen parties who met the description, to stop them and make an arrest. Having thus made a lawful arrest it was his duty to proceed with the search as he did. Of course, at the time this arrest was made the officer did not know whether the persons who had committed this crime were guilty of grand or petit larceny. If they had committed grand larceny they would have been, under T.C.A. sec. 39-4204, guilty of a felony, and it would have been required of the officer, after he had such information and the suspects met this information, to have made the arrest even though the crime was not committed in his presence, and an arrest thus made is a lawful arrest.

The State in support of its contention that the arrest was lawful and a search may thus be made cites *Thompson v. State,* 185 Tenn. 73, 75, 203 S.W.2d 361, and quotes therefrom, as follows:

" 'The substance of these provisions is that an officer may lawfully proceed to arrest without a warrant any person when the officer has, with reasonable cause, been led to believe that the person has committed, is committing, or is about to commit a felony. It is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws against felonies. It is impossible to define "reasonable cause" in terms to fit all cases arising. Each case must stand on its own facts. A narrow construc-

tion would open the way for the escape of desperate criminals and the defeat of justice. One too liberal would lead to the harassment of the innocent. But the officer may not be required to wait for assurance, or evidence which would convict; when circumstances fairly point to a felony it is his duty to act, and act promptly.' ''

■ The argument complained of, and cited as error, as made by the District Attorney General is not included in the bill of exceptions. It, not being a part of the record, cannot be reviewed by this Court since this Court has no way of knowing what the District Attorney General said. *Beadle v. State,* 203 Tenn. 97, 310 S.W.2d 157.

■ It is argued very forcibly that the trial judge erred in instructing the jury relative to grand larceny since it was not charged in the indictment, or indicated by the proof. This Court has held in *Reagan v. State,* 155 Tenn. 397, 293 S.W.755, that it is not error to charge the higher grades of an offense although the jury were precluded from finding the defendant guilty of any such grades. The Court there said this:

"Their verdict refutes the idea that they were confused or did not understand the charge. This practice was sanctioned by this court in *Goaler v. State,* 64 Tenn. 678."

The quotation thus made exactly fits the situation in the present case because the record clearly shows that the jury here were not confused as they only found these men guilty of petit larceny.

■■ The final argument of plaintiffs in error is that the trial judge committed error in instructing the jury

relative to the offense of receiving and concealing since there was no evidence of receiving and concealing on the part of the plaintiffs in error. We cannot see how such a charge was harmful in the least. The proof showed and the jury found that these plaintiffs in error were guilty of larceny, and having thus found, the mere fact they were charged on receiving and concealing would not affect them in the least. We have very recently in *Peek v. State*, 213 Tenn. 323, 375 S.W.2d 863, held that it was a common practice to charge larceny and receiving and concealing the same property in separate counts in the indictment. We in that case cited respectable authority for this position and why it was done, because frequently the parties thus charged in an indictment may have the goods in their possession and the proof may show that they received them and had knowledge that they had been stolen, but at the same time they were not guilty of the theft. The trial judge is required by statute (T.C.A. sec. 40-2518) to charge on both counts of an indictment where both are charged, and there certainly cannot be any harm to the parties when both are charged.

After having carefully reviewed this record and authorities we are satisfied that there is no reversible error in the record, and thus it is the judgments below must be affirmed.