Clifford Lee CRAIG, Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Dec. 4, 1974.

Certiorari Denied by Supreme Court May 19, 1975.

Howell G. Clements, Grant, Clements & Bowen, Chattanooga (Appointed), for plaintiff in error.

David M. Pack, Atty. Gen. of Tennessee, R. Jackson Rose, Asst. Atty. Gen., Nashville, Steve Bevil, Robert J. Batson, Asst. Dist. Attys. Gen., Chattanooga, for defendant in error.

## OPINION

OLIVER, Judge.

Indigent and represented by court-appointed counsel below and here, the defendant Craig, convicted of robbery under an indictment charging him with armed robbery and sentenced to not less than five nor more than 12 years in the penitentiary (TCA § 39–3901), has perfected an appeal in the nature of a writ of error to this Court.

By his fourth Assignment of Error, Craig assails his conviction upon the basis that the evidence is insufficient, taking the innovative position that it showed he "was either guilty of or innocent of the alleged crime of armed robbery as there was no evidence introduced that the defendant was guilty of simple robbery."

So, it is necessary that we carefully review and examine the evidence, and in doing so we must adhere to the historic legal principles governing appellate review of the evidence in criminal cases. *Webster v. State*, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; *McGill v. State*, 4 Tenn.Cr.App. 710, 475 S.W.2d 223.

In summary, the material evidence obviously accredited by the jury shows that on the day in question the defendant went to the "Ma and Pa" grocery store in Chattanooga, owned and operated by Mr. and Mrs. William Bell, on three different occasions, buying a soft drink the first time, a package of soap powder the second time, and returned a few minutes later and exchanged the soap powder for another brand; that he had also spent some time sitting outside the store earlier in the day; that he returned just before closing time and asked for some beer and potato chips or pretzels; that Mrs. Bell then became suspicious that the defendant might be preparing to rob the store and told her husband to call their daughter; that the defendant stopped Mr. Bell from using the telephone by striking him and pointing a gun at him and demanding money, and fired the gun at him although no bullet hole or shell casing was found; that Mr. Bell then ran from the store and into the flower shop next door to call the police, but the proprietor of that store had already done so; that after Mr. Bell left the store the defendant demanded money from Mrs. Bell; and that she gave him some money, and he demanded more and she threw at him the remainder of the money that was in the cash register, and he stooped over and picked it up and ran from the store. Investigating police officers found the defendant's wallet on the floor of the grocery store some three or four feet from the cash register, and his fingerprint was found on a bag of pretzels he brought to the cash register at the time of the robbery. Mr. Bell picked the defendant's picture from a group of five pictures brought to the store an hour later by the police, and that evening he identified the defendant in a line-up at the police station.

Relying upon the defense of alibi, the defendant did not testify at his trial and rested his case upon the testimony of his mother, his step-father, and two of his brothers to the effect that he was at home watching a basketball game on television during the time of the robbery. They also testified that he had told them of losing his wallet two or three days before the crime was committed.

Unquestionably, the defendant has failed to carry his burden of demonstrating here that the evidence preponderates against the verdict of the jury finding him guilty of robbery. It is no basis for complaint that a jury, for some unfathomable reason, elects to find a defendant guilty of a lesser grade of an offense upon proof unquestionably establishing his guilt of a higher grade. T.C.A. §§ 40–2520, 40–2521; *Jones v. State*, 200 Tenn. 429, 292 S.W.2d 713; *Reagan v. State*, 155 Tenn. 397, 293 S.W. 755; *Howard v. State*, Tenn.Cr.App., 506 S.W.2d 951.

The defense of alibi presented an issue of fact determinable by the jury, as the exclu-

sive judges of the credibility of the witnesses testifing in support of that defense and of the weight to be given their testimony. *Jones v. State*, 2 Tenn.Cr.App. 160, 452 S.W.2d 365, and authorities therein cited. By its verdict the jury rejected the defendant's alibi defense in this case, and upon this record we cannot say that the evidence preponderates against the jury's decision upon that issue.

 What we have said about the robbery also demonstrates how untenable is the defendant's first Assignment complaining that over objection the trial judge admitted testimony about his encounter with Mr. Bell. As noted, the defendant drew a gun on Mr. Bell and demanded money, struck him on the head or face and stopped him from using the telephone and fired the gun in his direction. Patently, that was part and parcel of the robbery of the store owned by Mr. and Mrs. Bell and operated by them as a family enterprise, even though the indictment charged that he robbed her and the proof shows that after Mr. Bell left the store to call the police the defendant forced Mrs. Bell to give him the money in the cash register. Of course, the question raised with respect to the admission of that evidence is that it prejudicially violated the general rule precluding admission of evidence of other crimes not charged in the indictment. As the trial court held in overruling the defendant's objection, a recognized exception to the rule just stated is that evidence of another and distinct crime is admissible if it was committed as a part of the same transaction and forms part of the *res gestae*. Stated in another way, the rule is that acts which are *res gestae* are admissible, even though they may show the commission of another crime by the accused. *Coffman v. State*, 3 Tenn.Cr.App. 634, 466 S.W.2d 241 and authorities therein cited.

Also without any foundation is the second Assignment charging the trial judge erroneously instructed the jury that armed robbery was punishable by death by electrocution. In the course of the charge the judge read T.C.A. § 39–3901 as follows:

"Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear. Every person convicted of the crime of robbery shall be imprisoned in the penitentiary not less than five nor more than fifteen years; provided, that if the robbery be accomplished by the use of a deadly weapon the punishment shall be death by electrocution, or the jury may commute the punishment to imprisonment for life, or for any period of time not less than ten years."

 This trial was on October 25, 1973. At that time, by reason of the unconstitutionality of Chapter 192 of the Acts of 1973 (*State v. Hailey*, Tenn., 505 S.W.2d 712), which in Section 4 eliminated the capital punishment provision, T.C.A. § 39–3901 as read to the jury by the trial judge was the statutory law of this State, with one exception. Capital punishment had been outlawed by *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (June 29, 1972). Accordingly, the trial judge went on to say to the jury, "The penalty of death by electrocution may not be considered as punishment for this crime."

Moreover, needless to add, the jury did not impose the death penalty.

There is no merit in the defendant's Assignment that the judge improperly commented on defense counsel's argument and that the Attorney General in effect argued or commented on the defendant's failure to take the witness stand. During his argument to the jury, defense counsel said:

"Now you may ask, well, now why didn't you put him on the stand. I think that the judge will charge you that there's a presumption of innocence and he doesn't have to take the stand and you're not to consider this, but I believe in your subconscience that you do consider this.

And I tell you why I didn't put him on the stand is because really there's nothing he could have added to his family. They all testified that during that period of time in the evening that he was at home all that day."

Then one of the Assistant District Attorneys General made the following statement in his argument:

"Mr. Clements gets up here and says, no, these four witnesses that I've put on here, who do not have records when they take the stand, I can put them on. They tell you that he was at home, and I'm not going to put my man up here because, well, here's why. Use your common sense, ladies and gentlemen—".

Then the following colloquy occurred between the court and the Assistant District Attorney General:

"THE COURT: (Interposing) Just a moment; let me interrupt so we won't get into what might well be an error. Even though you didn't object to Mr. Clements referring to reasons why he didn't put his man on, I would have sustained such objection, because it's not, it would not be a matter which should have been argued to the jury, and certainly if the State gets into any counter argument on that, I'm afraid we'd be getting into reversible error, so let's avoid that, if that's what I felt like you were about to get into—

MR. BEVIL: (Interposing) Well, Your Honor, I just felt like he opened the door.

THE COURT: Yes, but I'm going to close it.

MR. BEVIL; All right, sir."

In the charge the court instructed the jury:

"A defendant is not required to testify on his own behalf, and his failure to do so cannot be considered for any purpose against him nor can any inference be drawn from such failure to testify."

While we deprecate the remarks of defense counsel and the Assistant District Attorney General with reference to the failure of the defendant to testify, in view of the court's instruction to the jury on the subject we are satisfied that the minds of the jurors were not corruptly influenced against the defendant. There is a presumption that the jury does not disregard the trial court's instructions. *Howard v. State*, Tenn.Cr.App., 501 S.W.2d 573; *Klaver v. State*, Tenn.Cr.App., 503 S.W.2d 946; *O'Brien v. State*, 205 Tenn. 405, 326 S.W.2d 759. There is nothing in this record even suggesting that the jury disobeyed the court's instructions.

After careful consideration, we must reject as groundless the defendant's remaining Assignments, viz. that the court erred in failing to charge his identity must be proved beyond a reasonable doubt, in allowing an FBI fingerprint expert to testify because his name was not listed on the indictment, and that the court erred in charging the law relative to alibi because this shifted the burden of proof to the defendant.

Affirmed.

DWYER and RUSSELL, JJ., concur.