Roy HAWKINS, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

June 24, 1975.

Certiorari Denied by Supreme Court
Aug. 11, 1975.

Eugene Pennington, Madisonville, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Etrula R. Trotter, Asst. Atty. Gen., Nashville, Richard Fisher, Dist. Atty. Gen., Eugene Worthington, Asst. Dist. Atty. Gen., Cleveland, for defendant-in-error.

## OPINION

DUNCAN, Judge.

The defendant, Roy Hawkins, was tried in the Monroe County Criminal Court on an indictment charging first degree murder. He was found guilty of second degree murder and received a penitentiary sentence of twelve (12) years. The defendant's cousin, Hobert Lee Hawkins, was a co-defendant in the case, but was acquitted by the jury. The defendant has duly perfected his appeal to this Court.

The defendant's assignments of error all challenge the sufficiency of the evidence.

In considering and passing on assignments of error challenging the sufficiency of the evidence to warrant and sustain the verdict of the jury in criminal cases, we are bound by the law that a guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the State.

Such a verdict removes the presumption of the innocence of the accused, which stands as a witness for him until he is convicted, and raises a presumption of his guilt upon appeal, and he has the burden upon appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. *Gulley v. State,* 219 Tenn. 114, 407 S.W.2d 186; *Jamison v. State,* 220 Tenn. 280, 416 S.W.2d 768; *Chadwick v. State,* 1 Tenn.Cr.App. 72, 429 S.W.2d 135; *Phillips v. State,* 2 Tenn.Cr.App. 609, 455 S.W.2d 637.

Hence, we must examine the evidence in the light of the above principles of law.

In the hours prior to the homicide on June 7, 1974, the defendant, his cousin Hobert Hawkins, and the victim, Gray Pitcock, had been engaged in drinking and gambling. The three men had met at a pool hall in Madisonville, gambled at cards, consumed some alcohol and then went to the Overhead Inn, a local tavern in Sweetwater. The defendant and the victim had met each other twice before but the defendant's cousin, Hobert Hawkins, had never met the victim prior to that time.

The events immediately preceding the homicide began at approximately 6:30 p. m. After drinking at the Overhead Inn the three men went to the Mid-Town Grill. A waitress at this establishment testified that the three men entered about 6:30 p. m. and bought a six pack of beer to take out. The victim, Gray Pitcock, was driving the automobile when they departed.

Two witnesses, James and Peggy Hill, who were riding behind the victim's vehicle, testified that at approximately 6:45 p. m. the vehicle was weaving from side to side; that the driver was drinking from a bottle, and that the car almost hit a pickup truck head on. Moments later the victim's automobile once more began swerving from side to side and finally crashed into a dirt bank on the left hand side of the road. In the words of James Hill, "there was quite a commotion in the front seat."

The other witness, Mrs. Peggy Hill, testified that she saw a person in the back seat with his head lying up against the front seat; that she saw "movement" in the front seat after the car had stopped, and that this movement appeared to be the passenger in the front seat reaching over toward the driver's side or "just going towards the steering wheel or the switch keys."

Mr. and Mrs. Hill did not stop, but drove to Madisonville where they reported the events to the jailer. Neither of these two eyewitnesses to the accident could identify any of the occupants of the victim's car.

Soon after the report of the accident, Deputies Sheriff Richard Harrison and Mack Williams were dispatched to the scene. Upon approaching the accident scene, the deputies observed the defendant and his cousin emerging from the woods, approximately 150 yards from the wrecked vehicle. The defendant was bloody, his nose was swollen and both men appeared to be intoxicated. After arresting both men for public drunkenness, Deputy Harrison examined the wrecked vehicle and observed the deceased sitting on the driver's side with a seven (7) or eight (8) inch cut around his throat.

Another witness, Frank Moser, arrived on the scene in the interval between the accident and the arrival of the deputies. He testified that nobody was around the vehicle; that he recognized the person inside the car; and that the victim was still alive but blood was running from his neck. Mr. Moser then left to call the sheriff and ambulance.

After being taken to the police station, Hobert Hawkins, the defendant's cousin, made a statement to the sheriff. He stated that he was drunk; that he could not remember much, but did remember "Pitcock swinging his arm at Roy," and remembered "Roy hitting Pitcock"; that he didn't "remember seeing the knife," but did remember, "as soon as Roy hit Pitcock that they (Roy Hawkins and Gray Pitcock) were both covered with blood."

The defendant made no statement then but did testify in his own behalf at the trial.

It was his testimony that the deceased accused him of taking his money; that the deceased hit him in the face with some object; and that he was "just trying to keep him off of me." The defendant then testified, "I reached for my knife and striking and I must have hit him." The defendant denied that he was emerging from the woods as the officers arrived, but stated that he was on the road trying to catch a ride. He testified he did not know what happened to the knife, stating, "I lost it in the scuffle there somewhere."

None of the witnesses, who had a close view of the interior of the car, saw any type of blunt instrument or a knife. Mr. Frank Moser did testify that he saw some beer cans and an empty whiskey bottle lying on the transmission hump, but there is no evidence that these were used as a weapon.

Deputy Harrison testified that in the investigation it appeared that the defendant and his cousin had left the car, went into the woods and walked parallel to the road, before re-emerging some 150 yards from the accident scene.

Thus, from the evidence it is clear that the deceased was killed by the defendant, who cut the deceased's throat with a knife.

■ The law in Tennessee is that all homicide is presumed to be malicious, and thus second degree murder, in the absence of evidence which would rebut the implied presumption. *Gann v. State,* 214 Tenn. 711, 383 S.W.2d 32; *Bailey v. State,* Tenn.Cr. App., 479 S.W.2d 829; *Gordon v. State,* Tenn.Cr.App., 478 S.W.2d 911; *McClain v. State,* 1 Tenn.Cr.App. 499, 445 S.W.2d 942. To reduce the degree of the homicide the defense must prove an absence of malice, and a corresponding burden rests on the state to prove premeditation or some other ingredient to raise the degree of homicide. *Thomas v. State,* 210 Tenn. 297, 358 S.W.2d 315; *Shanklin v. State,* Tenn.Cr.App., 491 S.W.2d 97.

In *Gann v. State,* supra, the court stated the law in this manner:

"The law in Tennessee is that all homicide is presumed to be malicious, in the absence of evidence which would rebut the implied presumption. *Coffee v. State,* 11 Tenn. 283, 24 Am.Dec. 570 (1832); *Witt v. State,* 46 Tenn. 5 (1868); *Gray v. State,* 63 Tenn. 331 (1874); *Harper v. State,* 206 Tenn. 509, 334 S.W.2d 933 (1960).

"Likewise, if a weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, malice will be presumed from the use of the said weapon. *Lewis v. State,* 202 Tenn. 328, 304 S.W.2d 322 (1957); *Nance v. State,* 210 Tenn. 328, 358 S.W.2d 327 (1962). Thus, the proof of the use of a deadly weapon is sufficient to sustain a charge of second degree murder unless it is rebutted by other facts and circumstances. *Bostick v. State,* 210 Tenn. 620, 360 S.W.2d 472 (1962); *Smith v. State,* 212 Tenn. 510, 370 S.W.2d 543 (1963)."

The question, therefore, in the instant case, reduces itself to whether or not the presumption of malice has been rebutted by the facts and circumstances. We think not.

■ The jury has the function in homicide cases of determining the question of malice and whether or not the defendant has proved facts or circumstances sufficient to rebut the presumption of malice arising from the killing. *Gordon v. State,* supra; *Cagle v. State,* Tenn.Cr.App., 507 S.W.2d 121.

■ Obviously in the instant case, the jury concluded that the proof did not show an absence of malice. The defendant claimed that his actions were done in his own self-defense. The evidence is such that the jury was well warranted in finding that the deceased was unarmed. Even if there was a scuffle, as contended by the defendant, the jury could have found that the defendant was not warranted in resorting to the use of a deadly weapon against the deceased. At any rate, by its verdict, the jury rejected the defendant's plea of self-

defense. A defense of self-defense is a question for the exclusive determination of the jury. *McGill v. State,* 4 Tenn.Cr.App. 710, 475 S.W.2d 223; *Arterburn v. State,* 216 Tenn. 240, 391 S.W.2d 648; *Bryant v. State,* Tenn.Cr.App., 503 S.W.2d 955.

In arriving at its verdict in this case, the jury was entitled to consider that the murder weapon was never found and that shortly after the killing, the defendant was observed coming out of the woods. In this connection, it is noted that the defendant denied he had ever been in the woods after the incident. In addition to the officers' testimony about this facet of the case, it is recalled that Mr. Moser, who arrived on the scene before the officers, testified that he saw no one at the scene other than the deceased. Under this proof, the jury could logically have found that the defendant concealed the murder weapon in this case, and thereby an inference of guilt could be drawn. *Sotka v. State,* Tenn.Cr.App., 503 S.W.2d 212; *Cagle v. State,* supra. Also, the nature and severity of the seven (7) to eight (8) inch deep slash wound rebuts the defendant's insistence that he was just striking at the deceased. The jury could logically conclude from the evidence that the defendant stuck the knife in the deceased's throat, near the left ear, and deliberately pulled it all the way across his throat. In view of the slash cuts on the deceased's wrists, the inference is there that the defendant struck with the knife more than one time, or that the deceased had his arms raised to protect his face and neck. Moreover, we note that one witness stated that the defendant was reaching over to the driver's (deceased's) side after the car had crashed into the bank.

Other instances in the record could be pointed out, but the above show some of the things which the jury had before it to aid them in reaching a decision as to whether or not the defendant was justified in this killing. The jury concluded he was not, and we agree. We conclude that the evidence is sufficient to support the verdict of the jury finding the defendant guilty of second degree murder. The defendant has not carried his burden to show that the evidence preponderates against the verdict and in favor of his innocence.

The defendant's insistence that the verdict of the jury indicated passion, prejudice and caprice on the part of the jury is without merit. The defendant's determinate sentence of twelve (12) years is only two (2) years over the minimum sentence which could be imposed for the offense of second degree murder. T.C.A. § 39–2408. Under the facts of this case, the sentence imposed was most reasonable, and it being within the statutory limits prescribed for this felony, the complaint in this regard is not well taken. *Yearwood v. State,* 2 Tenn. Cr.App. 552, 455 S.W.2d 612; *Wheeler v. State,* 220 Tenn. 155, 415 S.W.2d 121.

The assignments of error are overruled and the defendant's conviction is affirmed.

RUSSELL and O'BRIEN, JJ., concur.