Maurice DAVIS, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Oct. 26, 1978.

Certiorari Denied by Supreme Court
Feb. 20, 1979.

Edward G. Thompson, Public Defender, Joe B. Jones and Bruce Kelley, Asst. Public Defenders, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Richard S. Maxwell, Asst. Atty. Gen., Nashville, W. Fred Axely, Asst. Dist. Atty. Gen., Memphis, for appellee.

BYERS, Judge.

## OPINION

The appellant was convicted of grand larceny and sentenced to serve three (3) years in the state penitentiary.

The appellant assigns three (3) errors, contesting the sufficiency of the evidence to support the verdict, and the admission of certain pictures into evidence.

We find the evidence preponderates against the verdict of the jury and reverse

the judgment and dismiss the charges against the appellant.

The State's evidence shows an armed robbery occurred on July 16, 1976, at the Binghampton Service Center in Memphis where the Department of Human Services distributed food stamps to those qualified to receive them. The crime was committed by two (2) men who took money and food stamps from the Center and a gun belonging to a guard. The stolen property was found the following day at the residence of a man named Bobby Jeffries.

Jeffries, along with the appellant, was indicted for armed robbery. We do not know from this record of the disposition of the case against Jeffries.

 We are not unmindful of the rule which prohibits us from reevaluating the evidence adduced at trial, *State v. Hatchett,* 560 S.W.2d 627 (Tenn.1978), or of the rule the jury verdict accredits the State's witnesses and establishes their theory of the case. *Hawkins v. State,* 527 S.W.2d 157 (Tenn.Cr.App.1975). We are mindful also of the rule that where the evidence preponderates against the verdict of the jury the judgment cannot stand.

 We find in this case, applying all the rules above stated, that the evidence does preponderate against the verdict of the jury.

As our short resumé of the facts indicated, the food stamps, etc., were taken in an armed robbery by two (2) men. This fact was not disputed.

The appellant was indicted for armed robbery. The trial judge charged grand larceny as a lesser included offense and it was on this offense the appellant was convicted. During the course of this armed robbery, several shots were fired one of which pierced the pants leg of one of the employees. The finding of grand larceny and the fixing of the minimum penalty of three (3) years is incongruous in light of the clear evidence the crime of robbery was committed and the weakness of evidence as to the appellant.

Connie Foster, a State's witness, who was employed at the Food Stamp Center, testified she worked near the entrance of the place robbed. At the Food Stamp Center, people who enter sign their names. She testified the two men who committed the crime entered and signed the names Steve Davis and Maurice Tillman. She testified she knew the appellant and he was not one of these two men.

Elizabeth Miller, the person from whom the food stamps were taken, testified she knew the appellant and he was not present during the robbery.

John Mason, the guard whose gun was stolen, testified he saw one of the men and he was not the appellant.

There was no evidence either direct or circumstantial to show the appellant waited outside the building to drive the two active participants in this crime from the scene.

The substance of the testimony of the witnesses for the State who were present at the scene of the crime was that the appellant was not present and was not actively participating therein.

The State offered a witness, Rubert Wilson, who lived a few blocks from the Center. Wilson testified he gave the appellant and Jeffries a ride—Jeffries to his home on Angeles Street and the appellant to his mother's home in South Memphis—after the time of the robbery. He said appellant told him they had "got the Food Stamp Office."

Wilson was arrested for investigation of this offense on the evening of the crime. He remained in jail until Sunday. During this time he gave a statement consistent with this testimony. Subsequent to his release he made a sworn statement saying his original statement was not true. At trial he said his original statement made to police was true.

Wilson was arrested because a car fitting the description of his vehicle was apparently used in the robbery. Wilson told the officer Davis had borrowed his car on this date.

James Carr was called as a State's witness. He testified he was present when plans were made to rob the Food Stamp Center. He said the appellant was not present when the plans were made. He further testified that a person called Big Man was present during the planning stages, and this person received some of the stolen food stamps. Wilson, the only State's witness to implicate the appellant, is the person known as Big Man.

In summary, the State presented three witnesses who were present when this crime occurred. Two of the witnesses said they knew the appellant and he was not one of the two men who committed this crime. The third eyewitness said he got a good look at one of the men and this man was not the appellant. The State presented two witnesses who were not shown to be present at the time of the crime but whose testimony dealt with the pre-crime and post-crime activity.

James Carr said the appellant was not present when the crime was planned. He says Wilson was and that Wilson received some of the stolen goods.

Wilson, who lived near the scene of the crime, and whose vehicle fit the description of one apparently seen at the scene of the crime, and who gave conflicting extrajudicial statements, says the appellant said "we got the Food Stamp Office." These six (6) words constitute the only evidence against the appellant.

The State's evidence clearly shows the appellant was not actively participating inside the Center where the robbery occurred. The State infers, therefore, the appellant was acting as the wheel man. There is, however, no evidence to support such an inference.

The only hint which we have about a get away vehicle is that it fits the description of a vehicle owned by Wilson.[1]

The evidence against the appellant, at best, is circumstantial. This evidence does not exclude all reasonable hypotheses other than that of guilt. One might more reasonably hypothesize another is guilty if the guilt is to be based on the driving of the active participants to and from the scene of the crime.

The evidence in this case clearly connects Jeffries with this crime. The photographs showing the stolen property in his possession would be admissible against him and against any person who is shown to have aided and abetted him in the commission of the crime. Wilson's testimony made them admissible. However, the picture and evidence concerning these items did not connect the appellant with Jeffries or strengthen Wilson's testimony. We cannot say, however, the introduction of these photographs was erroneous.

The introduction of the picture of the automobile was erroneous. There is no evidence to tie this vehicle to Jeffries, the appellant or to the crime. The jury could only speculate this vehicle might have some connection with the crime. If they found it did, such finding would be made without a scintilla of evidentiary support.

DUNCAN, J., concurs.

DWYER, Judge, dissenting.

I am in respectful disagreement with by brethren when they reversed and dismissed this record.

It is, as recognized by the majority, settled law that the appellant has the burden on appeal to show that the evidence preponderates against his guilt and in favor of his innocence. *State v. Sneed*, 537 S.W.2d 699, 701 (Tenn.1976). It is further settled law that a jury may in its wisdom draw permissible inferences from the evidence. *Gossett v. State*, 224 Tenn. 374, 455 S.W.2d 585 (1970). Lastly, it is settled law that it is not the function of the appellate court to reevaluate and reweigh the evidence adduced at the trial. *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978). Hence, the jury

1. This comes from an officer who received the information from someone unidentified in this record.

verdict affirmed by the trial judge has accredited the testimony of the State's witnesses and has resolved all conflicts in favor of the theory of the State. *Hawkins v. State,* 527 S.W.2d 157 (Tenn.Cr.App.1975). The latter authority specifically holds that the testimony of the State's witness, and in particular Rubert Wilson, has been believed by the jury and similarly endorsed by the trial court when it overruled appellant's motion for a new trial.

While it may be true that the facts here make out a clear-cut case of armed robbery as stated by the majority, the trial court, however, charged the lesser included offense of grand larceny, for which the appellant stands convicted. It is true that the trial court was under no legal obligation to charge on the lesser offense; however, that is no more reversible error than the jury's prerogative of finding the appellant guilty of larceny rather than armed robbery. *Reagan v. State,* 155 Tenn. 397, 293 S.W. 755 (1927); *Jones v. State,* 200 Tenn. 429, 292 S.W.2d 713 (1956); *Howard v. State,* 506 S.W.2d 951 (Tenn.Cr.App.1973); *Craig v. State,* 524 S.W.2d 504 (Tenn.Cr.App. 1974); T.C.A. 40–2520; T.C.A. 40–2521. Nor is the charge on the lesser offense any basis for undercutting the conviction.

It is also true that Wilson had given a statement ex curia absolving Davis from his original extrajudicial statement inculpating Davis. It was, however, Wilson's sworn testimony that appellant on the day of the robbery told him, ". . . we had got the Food Stamp Office." I think this admission evaluated in the light of the rules governing appellate procedure prevents a reversal of this judgment. Stated in another view, if our rules governing appellate review are viable an appellate court cannot discard the sworn testimony of Wilson and to do so, I think, is tantamount to an absolute reweighing and reevaluation of that testimony. In other words, my brethren have seen fit to discard the testimony of Wilson, as accredited by the jury and approved by the trial court contrary to the standards of appellate review. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963); *State v. Grace,* 493 S.W.2d 474 (Tenn.1973);

*State v. Sneed,* supra. It is further not the prerogative of the majority to evaluate circumstantial evidence in the light that a hypothesis of guilt has not been removed since it was just as logical to infer from the evidence that someone else was the "wheel" man, for this is a matter for the jury. *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856 (1956). The review here is predicated solely and exclusively on the settled rule of law that the evidence must be shown by the appellant to preponderate against guilt and in favor of his innocence, a burden which the appellant bears whether the evidence at trial is direct or circumstantial. *State v. Brown,* 551 S.W.2d 329 (Tenn.1977).

While concededly the evidence against appellant is not ironclad, it was, however, sufficient for the jury to find guilt beyond a reasonable doubt. In the absence of authority to usurp the powers of the jury and being hindered by an inability to view and hear the witness Wilson, I am disinclined from a cold record to decide, as the majority does, that he was untruthful and hence unbelievable, contrary to the jury's findings. *Ferguson v. State,* 138 Tenn. 106, 196 S.W. 140 (1917).

Lastly, while utilizing a jury-type argument approach in rebuttal to the majority position that none of the four witnesses identified appellant at the scene, it is apparent that the robbers may have been masked, which would result in appellant's non-identification, and therefore, is not, I think, too persuasive. It is also noteworthy that the names signed by the holdup men contained the first and last names of the appellant. In conclusion, as stated, the admission coupled with the names and lastly the fact that appellant did not testify, I think the evidence here does not preponderate against his guilt and in favor of his innocence. Simply put, he has not carried the burden in my view.

I would, under the authorities cited in this opinion, affirm this conviction.