# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 2000 Session

## STATE OF TENNESSEE v. JERRY D. CARNEY

**Appeal as of Right from the Criminal Court for Davidson County**
**No. 97-D-2821     Cheryl Blackburn, Judge**

---

**No. M1999-01139-CCA-R3-CD - Filed September 15, 2000**

---

The appellant, Jerry D. Carney, appeals his conviction by a jury in the Davidson County Criminal Court of first degree murder. Pursuant to his conviction for first degree murder, the trial court sentenced the appellant to life in prison in the Tennessee Department of Correction, with the possibility of parole. The appellant raises the following issues for our review: (1) whether there was sufficient evidence of premeditation to support his conviction of first degree murder; (2) whether the State violated Brady by failing to disclose audio taped statements made by the police of witnesses the day after the shooting; and (3) whether the trial court erred in precluding the appellant's cross-examination of the police officers who were testifying at trial about their training regarding self-defense and the application of deadly force. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Samuel E. Wallace, Jr., Nashville, Tennessee, for the appellant, Jerry D. Carney.

Paul G. Summers, Attorney General and Reporter, Marvin E. Clements, Jr., Assistant Attorney General, Pamela Anderson, Assistant District Attorney General, and Lisa Naylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Factual Background

On the night of August 13, 1997, the appellant, Jerry Carney, was "riding around" Nashville and drinking beer with his friends Eric Bradshaw, Mike Shane, Jimmy Womack, and Melia Gribble. Erin Harris, another friend, paged the appellant and requested that he pick her up at 716 Virginia Avenue. On the way to Virginia Avenue, Bradshaw remarked that he believed that someone who had a problem with his brother, someone named "Shane" or "Shawn," lived at that address.

Upon arriving at the residence, the four males exited the car and began urinating in the front yard. Bill Massey and Craig Cartwright walked out of the residence to investigate. The appellant began asking several people, "Who is Shane?" Cartwright responded that he was Shane. Upon hearing Cartwright identify himself as Shane, the appellant quickly walked back to the vehicle and sat in the back seat behind the driver.

Massey approached the car on the driver's side and noticed a gun on the seat near the appellant. Massey asked if the appellant had a problem. The appellant replied that there was no problem. Massey then requested one of the beers that was located in the back seat. The appellant handed Massey a beer. As soon as Massey touched the beer, the appellant grasped the gun with both hands. Massey threw down the beer and grabbed the appellant, hoping to disarm him. Cartwright had moved to the passenger side of the car. Although Massey was in direct contact with the appellant, the appellant never looked at Massey. Instead, the appellant pulled the slide of the gun back twice and fired six shots into Cartwright who was standing near the open passenger door.

The appellant, Bradshaw, Shane, Womack, Gribble, and Harris sped away in the car to Bradshaw's house. The appellant took a shirt and wiped the car, inside and out, in order to destroy evidence. He also removed a decal from the back glass of the car and tried to remove all of the spent shell casings from the car. The appellant entered Bradshaw's house, removed his bloody clothes, and soaked them in water in the bathtub. He then went to sleep and slept until the next day when he was picked up by the police for questioning.

The appellant testified that he shot Cartwright in self-defense. The appellant stated that he was afraid of Massey and Cartwright because they were much larger than he. The appellant claimed that Massey had grabbed the appellant by the shirt collar prior to the appellant's retreat to the car. The appellant alleged that he feared Massey or Cartwright would hurt him or try to take his gun and use it against him.

A jury convicted the appellant of first degree murder on November 19, 1998. The trial court sentenced the appellant to a term of life in prison, with the possibility of parole. The appellant appeals his conviction, arguing: (1) there was insufficient evidence of premeditation to support his conviction of first degree murder; (2) the prosecution committed a Brady violation by failing to disclose, prior to trial, audio taped statements made by potential witnesses; and (3) the trial court erred in precluding the appellant from cross-examining the police officers about their training regarding self-defense and the use of deadly force.

## II. Analysis
### A. Sufficiency of the Evidence
The appellant claims that the evidence was insufficient to support his conviction of first degree murder. To prove first degree murder, the State must establish that there was a "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1)(1997).

Specifically, the appellant argues that there was insufficient evidence to establish the existence of premeditation.[1]

Tennessee appellate courts accord great weight to a jury verdict in a criminal trial. In other words, a jury conviction serves to replace the presumption of the appellant's innocence with a presumption of the appellant's guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Therefore, on appeal, the appellant carries the burden of establishing why the evidence is insufficient to support the jury's findings. Id. The appellant must demonstrate to this court that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, questions concerning witness credibility, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

At trial, the State must prove all elements of first degree murder, including premeditation, beyond a reasonable doubt. State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). Premeditation requires "the exercise of reflection and judgment" and a "previously formed design or intent to kill." Tenn. Code Ann. § 39-13-202(d); State v. West, 844 S.W.2d 144, 147 (Tenn. 1992)(citing McGill v. State, 475 S.W.2d 223, 227 (1971)). The intent to kill does not have to pre-exist for any definite period of time. State v. Sims, No. W1998-00634-CCA-R3-DD, 2000 WL 298901, at *7 (Tenn. Crim. App. at Jackson, March 14, 2000). Moreover, it is the appellant's mental state at the time the appellant allegedly decided to kill that is the important factor in determining if the appellant was "sufficiently free from excitement and passion to be capable of premeditation." Id., see also Tenn. Code Ann. § 39-13-202(d).

Although there is no concrete test for determining the existence of premeditation, Tennessee courts have relied upon certain circumstances to infer premeditation. See State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998), cert. denied, 526 U.S. 1147, 119 S.Ct. 2025 (1999). Specifically, the following factors have been used to support a jury's inference of premeditation: (1) the appellant's prior relationship to the victim which might suggest a motive for the killing; (2) the appellant's declarations of intent to kill; (3) the appellant's planning activities before the killing, including the procurement of a weapon or preparations for concealment of the crime; (4) the nature of the killing, including the appellant's using a deadly weapon upon an unarmed victim, killing the victim while the victim is retreating or attempting escape, or killing the victim in a particularly cruel manner; (5) the appellant's demeanor before and after the killing, including a calm demeanor

---

[1]The appellant also repeatedly argues that the evidence was insufficient to prove deliberation. However, after the 1995 amendments to the first degree murder statute, the State no longer needs to prove deliberation as an element of first degree murder. Tenn. Code Ann. § 39-13-202(a)(1); see State v. Mason, No. 01C01-9603-CC-00103, 1997 WL 311900, at *11 n. 4 (Tenn. Crim. App. at Nashville, June 6, 1997).

-3-

immediately after the killing. See Pike, 978 S.W.2d at 914-15; State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997)(citing Brown, 836 S.W.2d at 541-42, and State v. West, 844 S.W.2d 144, 148 (Tenn. 1992)); State v. Gentry, 881 S.W.2d 1, 4-5 (Tenn. Crim. App. 1993); State v. Anderson, 835 S.W.2d 600, 605 (Tenn. Crim. App. 1992).

A jury, upon consideration of the facts adduced at trial, could conclude, beyond a reasonable doubt, that the appellant formed a premeditated intent to kill prior to shooting the victim. The appellant was looking for "Shane," who had caused problems for his friend's brother. This fact suggests a possible motive for the killing, namely retribution for a friend. Next, the appellant quickly walked to the car after Cartwright said he was Shane. At that time, there was no reason for the appellant to return to the car to get his gun, unless he was planning to use it. The appellant pulled the slide on the gun back twice, and fired six times at Cartwright, an unarmed victim. Multiple shots or blows alone may not be used to establish premeditation, but may be considered along with other circumstances in assessing the existence of premeditation. Brown, 836 S.W.2d at 542. Additionally, the appellant went home and slept until the police arrived, indicating his calm demeanor immediately after the murder. See Sims, 2000 WL 298901, at *8.

Moreover, the jury, as the trier of fact, must decide if the appellant acted in self-defense. Hawkins v. State, 527 S.W.2d 157, 161(Tenn. Crim. App. 1975). At trial, and in prior statements to the police, the appellant repeatedly gave false or contradictory statements, which damaged his credibility with the jury. The appellant went to great lengths to conceal or destroy as much evidence as possible on the night of the murder. The appellant wiped down the car, removed a decal and spent shell casings from the car, washed his bloody clothes and gave his gun to a friend's father to hide. Even though concealment of evidence alone does not suggest premeditation, concealment of evidence may establish the appellant's guilt by negating the appellant's claim of self-defense. See West, 844 S.W.2d at 148. Additionally, evidence sufficient to prove premeditation equally indicates the absence of self-defense. State v. Pryor, No. 89-191-III, 1990 WL 11096, at *1 (Tenn. Crim. App. at Nashville, February 13, 1990).

Although the evidence of the appellant's guilt may not be overwhelming, it is not unfathomable for a jury to have reasonably found that the appellant shot Cartwright with a premeditated intent to kill. Moreover, the jury could have reasonably concluded that the appellant did not act in self-defense. The appellant has not demonstrated why the evidence will not support his conviction. Therefore, we uphold the jury's verdict.

B. Brady violation

The appellant claims that he was denied his right to due process when the State failed to disclose potentially exculpatory audio taped statements made to the police by witnesses the morning after the shooting. In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97(1963), the United States Supreme Court held that the prosecution has a constitutional duty to furnish the accused with exculpatory evidence pertaining to either the accused's guilt or innocence and the potential punishment that may be imposed. The Supreme Court further held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97. Moreover, the prosecution must disclose evidence which may be used by the appellant to impeach a witness. Giglio v. United States, 405 U.S. 150, 154-55, 92 S.Ct. 763, 766 (1972).

Before this court can find a Brady violation, all of the following elements must be present: (1) the appellant must have requested the information[2]; (2) the State must have suppressed the information; (3) the information must have been favorable to the appellant; and, (4) the information must have been material. State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995). The appellant has the burden of proving the Brady violation by a preponderance of the evidence. Id.

First, the appellant claims he never received the taped statements of Ryan Curtis, Tiffany Elkins, and Natasha Holland. We first note that there is evidence in the record to suggest that, prior to trial, the appellant requested the disclosure of Brady materials. Therefore, the first prong of the Brady test has been satisfied. However, the appellant has offered no proof that taped statements of Curtis, Elkins, or Holland even exist. A bald assertion that the tapes exist without proof is not enough to satisfy the appellant's burden regarding the remaining Brady factors. See State v. Hamlin, No. 01C01-9604-CC-00174, 1999 WL 77853, at *5 (Tenn. Crim. App. at Nashville, February 19, 1999). As a consequence, the appellant has not demonstrated that the State suppressed information that was favorable and material to the appellant's case.

Furthermore, the appellant contends that, even though he received the tapes of Melia Gribble, Erin Harris, and Bill Massey on the first day of trial, the delay in receiving the information prejudiced his defense. A delayed disclosure of evidence requires a different analysis than a complete nondisclosure of evidence. This court has previously held that "if there is only a delayed disclosure of information, in contrast to a complete failure to disclose exculpatory information, Brady normally does not apply, unless the delay itself causes prejudice." State v. Hall, No. 01C01-9710-CC-00503, 1999 WL 34782, at *9 (Tenn. Crim. App. at Nashville, January 28, 1999), perm. to appeal denied (Tenn. 1999).

Accordingly, delayed disclosure requires an inquiry into whether the delay prevented the defense from using the disclosed material effectively in preparing and presenting the appellant's case. State v. Caughron, 855 S.W.2d 526, 548 (Tenn.1993)(citing United States v. Ingraldi, 793 F.2d 408 (1st Cir. 1986)). Moreover, a potential Brady violation can be cured by the appellant's failure to move for a continuance after receiving the information, the appellant's thorough cross-examination of the witness regarding the evidence, or by the appellant's failure to call or recall an available witness concerning the exculpatory statements. See Id., State v. Ewing, No. 01C01-9612-CR-00531, 1998 WL 321932, at *9 (Tenn. Crim. App. at Nashville, June 19, 1998).

_____

[2] Nonetheless, the State is obligated to release obviously exculpatory evidence regardless of whether or not it was requested. Edgin, 902 S.W.2d at 390.

In the present case, the appellant received the taped interviews on the first day of trial as Jencks material. Upon receiving the tapes, the appellant failed to move for a continuance to review the material. The witnesses had been available for the appellant to interview prior to trial. Moreover, when Massey took the stand, the appellant had an opportunity to cross-examine him regarding his earlier statements. Harris was in custody and was available for the appellant to call at trial in order to examine her about the taped statements. Furthermore, the trial court permitted the appellant to recall Melia Gribble, who had earlier testified, to allow the appellant to attempt to bring out information contained on the tape. The appellant also had the opportunity to introduce Gribble's statement as evidence. However, the appellant failed to lay a proper foundation for the introduction of the statement, even though he was instructed on how to do so by the trial court. Regardless, there was no exculpatory material contained in the tapes. Based upon the foregoing, we conclude that the appellant was not prejudiced by the delayed disclosure of this information.

### C. Cross-Examination Regarding Police Training

The appellant also argues that he should have been allowed to cross-examine the police officers who testified at his trial regarding the training they had received concerning self-defense and the use of deadly force. The appellant contends that this evidence should have been admitted because the testimony was relevant to the appellant's claim of self-defense. The appellant alleges that police are trained to shoot at "center mass" for self-defense. The appellant argues that because he shot at "center mass," testimony that police were trained to do the same in self-defense situations would have bolstered his claim of self-defense. The trial court disagreed and ruled this testimony not relevant. We agree with the trial court.

In Tennessee, the definition of self-defense is set out in Tenn. Code Ann. § 39-11-611(a)(1997):

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Moreover, Tenn. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Police training concerning the proper response to self-defense situations is irrelevant to the appellant's beliefs or actions on the night of the shooting, unless, perhaps, the appellant had undergone such training himself. Cf. State v. Cole, No. 98-CAC-01001, 1998 WL 429712, at *1-2 (Ohio App. 5 Dist., July 2, 1998)(training the defendant's father gave the defendant concerning self-defense was "too vague and unconnected to the incident at issue to be considered material"). There was no evidence adduced at trial to suggest that the appellant had been a police officer who was trained in self-defense or the use of deadly force. Nor

was there evidence that the appellant had any other self-defense training. This issue is without merit.

### III. Conclusion
Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE