IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. CORY CAMPBELL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-04008    Paula Skahan, Judge**

---

**No. W2005-01418-CCA-R3-CD  - Filed November 3, 2006**

---

Defendant, Cory Campbell, was indicted and charged with aggravated assault. Following a jury trial, Defendant was convicted of the lesser included offense of felony reckless endangerment. The trial court sentenced Defendant to serve one year in the Shelby County Correctional Facility, with ninety days to be served on weekends and the remainder suspended. Defendant appeals his conviction, arguing that the evidence was insufficient to convict him of felony reckless endangerment and that the trial court lessened the State's burden of proof in response to the jury's questions during deliberations. After a thorough review of the record, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCCLIN, JJ. joined.

C. Anne Tipton, Memphis, Tennessee, (on appeal); Marvin Ballin, Memphis, Tennessee, (at trial), for the appellant, Cory Campbell.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; Paul Goodman, Assistant District Attorney General; Jack Irvine, Assistant District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

#### I. Background

On June 6, 2002, Defendant walked into Reginal Reed's yard, located at 1154 Walker, Memphis, Tennessee, and shot the victim, Quincy Malone, in the upper thigh with a handgun. Mr. Malone ran home to his at house at 1158 Severson, one street away from the residence where he was shot. The victim told his mother, Karen Malone, that he had been shot by Defendant, ran into the house, and collapsed on the living room floor. Defendant's mother called 9-1-1, and he was

subsequently taken to the hospital. There were no words exchanged between the victim and Defendant prior to the shooting, however, the victim had been in a physical altercation with Defendant's father two days prior to the incident. The altercation took place at 1140 Walker, where Defendant lived. The residence also operated as the neighborhood convenience store.

Captain Cham Payne of the Memphis Police Department responded to the 9-1-1 call. While investigating the scene, Captain Payne found a .38 caliber spent bullet casing on the floor at Defendant's residence. He also recovered a Luger .38 caliber five shot chrome plated pistol from the trunk of a car parked in the backyard of Defendant's residence. At the time the gun was recovered by Officer Payne, it was loaded with four live rounds of ammunition.

Katherine Carroll, Defendant's mother, testified that Defendant was living with her at 1140 Walker at the time of the incident. She said that she saw Defendant leaving the house on the morning of the incident and he did not appear to be aggravated or angry about anything. When Defendant returned to the house, he told Ms. Carroll that someone pulled a gun on him and that he shot someone. She said that Defendant appeared "real scared" and "like he was in fear of his life." Ms. Carroll said that Defendant immediately called 9-1-1. She said that when the police responded to the residence, Defendant "turned [himself] in." Ms. Carroll said that she did not hear the "single shot," presumably referring to the one that Defendant fired. However, she said that while Defendant was calling 9-1-1, she "heard a whole lot of shots" that "sounded like [they were] coming from the back of the house. Like somebody was shooting at the back of the house." Ms. Carroll did not see any gun shot holes in the back of the house.

Defendant testified that prior to the shooting, he was involved in an altercation between his father and the victim and the victim's brother. Defendant said that he was in a back room at 1140 Walker when the fight between his father and Quincy and Nathaniel Malone began in the front portion of the house. He said that he became involved in the altercation after his girlfriend implied to him that Quincy and Nathaniel Malone were trying to "jump" his father. Defendant said that he was not initially concerned about the fight, but he "knew it was out of hand" when someone threw a pickle jar at his father.

After the pickle jar was thrown, the Malone brothers were "pushed out the door" of the house and Defendant's father followed them outside. According to Defendant, when his father stepped outside onto the porch, the victim and his brother attacked his father. As Defendant pushed the brothers away from his father, he was struck in the face by the victim. No one was hurt during the altercation. Defendant saw both Malone brothers on two consecutive days following the altercation. During these encounters, the victim frowned at Defendant, but nothing happened and no threatening words were exchanged.

On the day of the shooting, Defendant armed himself by placing a pistol in the waistband of his pants. He explained that he was carrying the pistol because it was a rough neighborhood and his father had "substantial amounts of cash just laying around everywhere" at the house. Defendant said that he left his house that morning to go to his car which was parked on the opposite side of the street

from the residence. As he was walking to his car, Defendant said that Reginald Reed yelled at Defendant from 1154 Walker and asked Defendant to come and talk to him. Defendant said that he did not feel threatened and walked over to the house without hesitation.

When Defendant reached the house, Reginald Reed was the only person on the front porch. A man named Baby Face was sitting on the porch next door to Mr. Reed's house. Defendant said that he and Mr. Reed were talking about the altercation between the victim, his brother, and Defendant's father, when the victim and his brother came out of Mr. Reed's house and onto the front porch. Defendant spoke to the victim and his brother, to which the victim responded with a frown. The victim then said "boy, what's up now? What's up now?" and lifted his shirt to show Defendant his gun. Defendant then showed the victim the gun that he was carrying and told the victim, "if you shoot me I'm going to shoot you back."

Defendant said that at this point, the victim's brother cautioned him to leave Defendant alone. The victim replied, "oh, since he got a gun, I'm fixing to make him to use it." The victim then "grabbed at his gun and jumped off the porch," and Defendant pulled out his own gun and shot the victim. Defendant said that he feared for his life and thought that he had no choice but to shoot the victim before the victim shot him. After shooting the victim, Defendant ran back to his house. When he arrived home, he ejected the spent bullet casing onto the floor and told his girlfriend to put the gun in the trunk of his car in the backyard of the house. Defendant said that when the police arrived at his house he told them where his girlfriend had put the gun. He was then transported to the police station, but refused to give a statement to the police regarding what happened.

On cross-examination, Defendant testified that although he frequently carried a gun around the house, concealed in his jeans, neither his mother and father, nor his girlfriend knew about the gun. He said that on the day of the incident, his car was parked on Greenwood, which was closer to his residence and in the opposite direction from 1154 Walker where the incident occurred. Defendant said that he was aware that the police never recovered a gun on the victim's person or in his house.

On re-direct examination, Defendant said that he did not say anything to the victim to provoke him to jump off the porch and pull his gun on Defendant. On re-cross examination, Defendant admitted that he never saw the barrel of the victim's gun while the victim was on the porch. He said that he saw the barrel of the gun when the victim jumped off the porch, but the victim never pointed the barrel of the gun at Defendant.

## II. Sufficiency of the Evidence

On appeal, Defendant argues that the evidence was insufficient to support his conviction for reckless endangerment with a deadly weapon. When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). On appeal,

the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).

In order to convict Defendant of felony reckless endangerment, the State was required to prove that Defendant "recklessly engage[d] in conduct which places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). When the conduct is conducted with a "deadly weapon," the crime is a class E felony. T.C.A. § 39-13-103(b). The term "reckless," refers to "a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." T.C.A. § 39-11-302(c).

Defendant first asserts that the evidence was not sufficient for a conviction of reckless endangerment because the State did not show that Defendant placed the victim in the way of harm. The proof at trial showed that Defendant frequently carried a concealed gun in the waistband of his pants and that he was doing so on the day of the incident. While wearing the gun, Defendant walked down the street to a neighboring house where he encountered the victim. Testimony from both Defendant and the victim established that, after exchanging words with the victim, Defendant fired the weapon at the victim and shot him in the thigh. Defendant intended to fire the gun at the victim, and he knew that doing so would cause injury to the victim. All of this occurred while Defendant was standing in the front yard of a neighborhood residence. Although Defendant contends that his actions were taken in self-defense, the jury resolved any credibility issues in favor of the State. We conclude that a rational trier of fact could have found that Defendant was guilty of reckless endangerment beyond a reasonable doubt.

Defendant's next argument is that the trial judge's response to the jury's questions lessened the burden of proof required for the State to prove Defendant's guilt, thereby lessening the evidence required for a conviction. Consequently, Defendant argues that the jury found him guilty of reckless endangerment, although the evidence was insufficient for such a conviction, because it incorrectly believed that the statutory requirements for such a conviction had been met.

The jury's first question was as follows:

Judge Skahan, we have a problem determining a verdict because we feel the prosecution did not present, One, enough witnesses, police officers giving testimony

to what was said. Two, any police reports. Three, any eyewitnesses. Four, [9-1-1] call, report. Where do we go from here?

The trial court responded:

Well, the proof is closed. That's pretty much all I can tell you right now. Okay. You're to do the best that you can with what you have. You are the judges of the facts and the law as I have given it to you. Okay. And just do the best that you can with what you have. All right. Thank you. And we appreciate your hard work.

After further deliberations, the jury posed a second question to the trial court:

[I]f we find not guilty by self-defense of the indictment charge of aggravated assault, can we find guilty of reckless endangerment? Is self-defense a defense for this also?

The trial court responded:

Let me answer it this way. Self-defense is a complete defense. If you find self-defense, it is a defense to the indicted charge and any lesser included offense. All right. If you find the defendant not guilty of aggravated assault, as you know, as you've read the verdict form, or if you have a reasonable doubt of that offense, you will acquit him thereof and then proceed to inquire whether or not he is guilty of reckless aggravated assault and proceed down as we discussed yesterday. But self-defense is a complete defense to any charge. If you find self-defense.

The following discussion was had after the trial court's response:

| JUROR: | Basically your answer to the question was no. To our question it was no. Self-defense is self-defense. |
|---|---|
| THE COURT: | If it's self-defense, it's self-defense to all charges. |
| JUROR: | Right. |
| THE COURT: | But it's a complete defense to any and all charges. Not just the indicted charge but to any lesser included charge. |
| JUROR: | Okay. |

Defendant argues that in responding to the first question, the trial court did not reiterate that the burden of proof is on the State to prove Defendant's guilty beyond a reasonable doubt. He argues that the trial court's response indicated that "although the proof was insufficient to prove beyond a reasonable doubt the elements of the crime" the jury should do its best with the evidence available

to it. Defendant asserts that this response lowered the State's burden of proof for any conviction. Defendant further argues that because he readily concedes on appeal that the evidence was sufficient to convict him of aggravated assault or reckless aggravated assault, an acquittal of these two charges would be based either on his self-defense theory or the State's failure to sustain its burden of proof as to the elements of the offense. Defendant contends that had the jury believed the self-defense argument, it would have acquitted him of all charges. Since Defendant was acquitted of both aggravated assault and reckless aggravated assault, but found guilty of reckless endangerment, he argues that the jury could not have accepted his self-defense argument and therefore convicted him based on a lesser burden of proof. Defendant implies that the jury's verdict was compromised and asserts that because his conviction was "predicated upon a lower burden of proof than beyond a reasonable doubt" the conviction should be overturned.

As pointed out by Defendant in his brief, the evidence was sufficient to support a conviction for aggravated assault because Defendant testified that he intentionally and knowingly fired the gun at the victim with the intent to cause bodily harm. *See* T.C.A. § 39-13-102(a)(1)(A), (B) (Supp. 2005). The evidence was also sufficient for a jury to find Defendant guilty of reckless endangerment, a lesser-included offense of aggravated assault. *State v. Hatfield*, 130 S.W.3d 40, 43 (Tenn. 2004); T.C.A. § 39-13-103(a), (b). The record reflects that the trial court instructed the jury regarding the law as applicable in this case. Defendant does not dispute that the instructions satisfied the necessary requirements of the law. Although Defendant argues that the jury relied on a lesser burden of proof in convicting him of reckless endangerment, there is nothing in the record to indicate that this is correct and we cannot speculate as to what was in the minds of the jurors in reaching their decision. Furthermore, the trial court was not required to reiterate the burden of proof in answering the questions from the jury in this case.

The trial court told the jury, "you are the judges of the facts and the law as I have given it to you," a reference to the jury charge, which contains the applicable burden of proof. Additionally, the trial judge clearly explained that a finding that Defendant acted in self-defense was a complete defense to the indicted charge and all lesser included offenses. "The presumption is that a jury follows the instructions of the court." *State v. Vanzant*, 659 S.W.2d 816, 819 (Tenn. Crim. App.1983) (citing *Craig v. State*, 524 S.W.2d 504 (Tenn. Crim. App. 1974)). "In order to overcome this presumption, an accused must show by clear and convincing evidence that such instruction was not followed." *Id*.

We conclude that Defendant has failed to show that the jury did not follow the trial court's instruction in reaching its decision. The trial court properly instructed the jury as to the law, and the jury rendered its decision in accordance with the applicable burden of proof. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE